*236 OPINION OF THE COURT
David O. Boehm, J.
The main issue on the motion before this court presents what appears to be a relatively new and unsettled question in New York. Broadly framed, the question is whether plaintiff is precluded from bringing an action against his former counsel for legal malpractice committed with respect to a personal injury action where plaintiff settled that action with the original defendant. Here, the plaintiff, Raymond Titsworth, settled the original action, accepted payment and is now suing defendant, his attorney in that action, for the difference he now claims he would have received from a jury but for defendant’s malpractice. Having accepted payment and executed a general release without reservation of rights, the question is whether plaintiff has a cause of action against the defendant.
The pertinent facts are as follows. Titsworth, his wife Virginia, and her daughter, Michele Hudson, were injured in an automobile accident on December 27, 1972 with a car owned by Condor Electronics, Inc. and operated by Michael T. Corso. The accident occurred as the Titsworth vehicle was exiting from 1-490 to Chili Avenue in the Town of Gates, and was struck by the Condor vehicle which was proceeding the wrong way on the exit ramp. Titsworth became permanently disabled as a result of the injuries he sustained.
Defendant, John Mondo, was retained by the Titsworths and he commenced two actions against Corso and Condor. One action, brought in the name of Virginia Titsworth, as parent of Michele Hudson, an infant, sought $10,000 as damages for the infant’s personal injuries and $2,500 as the derivative claim for expenses and loss of services. The other action of Raymond and Virginia included claims of $100,000 for Raymond’s personal injuries, $10,000 for Virginia’s personal injuries and $10,000 each for loss of the other spouse’s services, or a total of $130,000.
Condor is a small electronics firm owned and operated by Corso. At the time of the accident, the Condor vehicle was insured by Empire Mutual, with coverage of $100,000/$300,-000.
For reasons not pertinent here, the Titsworths discharged defendant on or about January 8, 1975 and retained attorney John A. Shields in his place. However, on January 31, 1975 *237 Mondo caused a note of issue and statement of readiness to be filed. After receipt of $483.25, covering fees and disbursements, on February 13, 1975, defendant turned over the file to Shields, and an order of substitution was obtained on March 21, 1975.
Thereafter, Shields brought a motion to increase the ad damnum in Raymond’s action from $100,000 to $500,000, but Special Term denied the application. Its order, dated July 22, 1975, does not recite the grounds for the denial, but may have been based upon the grounds raised by counsel for Condor and Corso; that the note of issue and statement of readiness having been filed, the Titsworths had failed to demonstrate, as required, any change in circumstances. For some reason not explained, no appeal was taken from this order.
Thereafter, on May 18, 1976, the Titsworths settled their actions for $90,000 and executed a general release without limitation or reservation which released Condor and Corso from all claims for damages and injuries arising out of the accident. Of this sum, $1,000 settled the daughter’s claim and the unallocated balance of $89,000 settled the Titsworths’ claims.
Two months later, in July 1976, Raymond brought this suit against the defendant for $150,000 in damages, contending, among other things, that defendant had sued for an inadequate amount in the personal injury action and had not only failed to increase the amount sued for right after receiving a report on January 8, 1975 from the attending physician as to the permanence of Raymond’s injuries but had earlier failed to do so after receiving the neurosurgeon’s report on August 30, 1974 which contained similar information. In addition, the complaint alleges that defendant had improperly filed the note of issue and statement of readiness after he had been discharged and had thereby effectively prevented plaintiff’s new counsel from increasing the ad damnum.
Defendant now brings this motion for summary judgment. Plaintiff is cross-moving for the same relief and, further, for leave to add Virginia as a plaintiff and to increase the damage claim from $150,000 to $500,000.
There is much force to defendant’s argument that the plaintiff, having accepted a settlement substantially less than the amount sued for where there was virtually no issue of liability, may not now require a court to speculate as to what a jury would have awarded. Further, as defendant points out, *238 how can plaintiff claim damages as a result of the order denying his motion to increase the amount sued for when he himself allowed the matter to rest there without even troubling to appeal.
There is little law in this State as to what effect the settlement of the underlying action has upon an action against an attorney for legal malpractice committed during the course of his representation in that action.
At the outset one is met with the question of the effect of the plaintiff having executed a release without reservation. As to co-tort-feasors, it was formerly the law that the release of one joint tort-feasor without reservation released all (Milks v Mclver, 264 NY 267; Wellander v Brooklyn Hosp., 12 Misc 2d 432). However, effective September 1, 1972, the common law was changed so that instead of releasing all of the other tortfeasors liable for the same injury the settlement now reduces a claim against other tort-feasors only to the extent of the amount of the settlement (General Obligations Law, § 15-108, subd [a]; see Rock v Reed-Prentice, 39 NY2d 34).
Even before the enactment of subdivision (a), of section 15-108 of the General Obligations Law, there was a distinction which remains today when the tort-feasors are successive and independent of each other and not liable "for the same injury.” In such case, it was and is held to be a question of fact as to the intent of the parties (Wille v Maier, 256 NY 465; Derby v Prewitt, 12 NY2d 100; Dury v Dunadee, 52 AD2d 206, app dsmd 40 NY2d 845).
In Wille v Maier (supra), the plaintiff had been sued in a prior action in which she unsuccessfully asserted that a contract had been fraudulently induced by the defendant. The defendant was acting at that time as a representative of the corporation which brought the first suit and obtained judgment against plaintiff, who then paid $10,000 in settlement of the judgment and gave the corporation a general release. She then sued defendant, alleging that he undertook to act as her attorney and erroneously advised her. Although the action was brought in fraud rather than malpractice, the Court of Appeals held that the release to the corporation did not also release the lawyer because no relationship of joint tort-feasors existed when the release was signed.
Similarly, the release executed by the plaintiff Titsworth, running to Corso and Condor without reservation should not also release the defendant Mondo. Although the claim against *239 the defendant for legal malpractice refers to the same injuries, physical and economic, suffered from the Corso and Condor accident, the wrong claimed is separate and independent. The damages result from the claimed negligence of a lawyer rather than from the negligence of an automobile operator, notwithstanding such damages stem from the same physical injuries and financial loss.
Nevertheless, two recent decisions, one by the Appellate Division, Second Department and the other by a New York County Supreme Court, have reached different conclusions.
In Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy (59 AD2d 551) the Second Department reversed a judgment against the defendants, plaintiff’s former counsel, for legal malpractice and dismissed the complaint. The plaintiff had entered into a settlement agreement prior to bringing the malpractice action. The court held that the action based upon the alleged mistake of counsel prior to settlement could not be brought since the plaintiffs’ agreement to the settlement terminated the litigation.
In New York County shortly thereafter, Justice Greenfield refused to follow the Second Department. In an action for legal malpractice, the plaintiff claimed that he was obliged to settle an action in Federal court for commissions for $45,000 but that had it not been for the malpractice of the defendants’ handling of his case he would have recovered $5,000,000. The defendants moved for summary judgment, arguing that the settlement in Federal court barred the malpractice action. Justice Greenfield held that execution of the release and retention of the settlement proceeds constituted ratification of the settlement as to the third party but did not in and of itself preclude a malpractice claim. In so holding, Justice Greenfield acknowledged that he was disagreeing with Kerson v Shayne (supra), observing: "Where the termination is by settlement rather than by a dismissal or adverse judgment, malpractice by the attorney is more difficult to establish, but a cause of action can be made out if it is shown that assent by the client to the settlement was compelled because prior misfeasance or nonfeasance by the attorneys left no other recourse * * * [T]he cause of action for legal malpractice must stand or fall on its own merits with no automatic waiver of a plaintiff’s right to sue for malpractice merely because plaintiff had voluntarily agreed to enter into a stipulation of settlement.” (Becker v Julien, Blitz & Schlesinger, 95 Misc 2d 64.)
*240 However, summary judgment was granted for the defendants because plaintiff did not show that he settled only because no other alternative existed or that the settlement was improvident or was reluctantly agreed to by him because the previous actions by his attorneys left him no alternative.
A strong argument, nevertheless, may be made that an attorney should not be compelled to defend against a claim for damages which his former client has already chosen to settle. It would seem at first blush to be the better practice to require the client to go to trial on the issue of liability and damages and then, only if a recovery had been made in excess of the amount sued for, should the client be permitted to sue his former attorney for the difference, as in this case. To permit a dissatisfied client to sue his attorney, after having settled, for a theoretical difference in damages which the client claims he would have been able to recover but for his attorney’s malpractice appears to impose an unfair burden. Indeed, one out-of-State court in affirming a directed verdict in favor of the attorney in a malpractice action stated: "To allow a client who becomes dissatisfied with a settlement to recover against an attorney solely on the ground that a jury might have awarded them more than the settlement is unprecedented.” (Glenna v Sullivan, 310 Minn 162, 170.)
Another court has held that in a case involving a claim of misfeasance or nonfeasance, rather than malpractice, an engineer was "judicially estopped” from recovering damages against his union and its chief officer for failing to properly present his claim after he had already recovered a judgment against the railroad for total and permanent disability (Gibson v Johnson, 414 SW2d 235 [Tex]).
The Supreme Court of Iowa went even further and held that although a plaintiff was not prevented from establishing the actual extent of her damages in a malpractice action, the attorney was not negligent for not suing for a larger sum of money. It said: "[T]hese matters were within the area of a lawyer’s judgment and an issue which, in absence of testimony relating to appropriate standards, the court could not determine. Our attention has not been directed to any case in which a court has ever held an attorney negligent for not suing for enough money.” (Baker v Beal, 225 NW2d 106, 113 [Iowa].)
In another out-of-State case, a malpractice action was brought against an attorney because he had allowed the *241 Statute of Limitations to run in a personal injury action. The Court of Appeals of Kentucky held that where the clients were able to bring suit on the same cause of action in another jurisdiction with a longer Statute of Limitations and received a considerable settlement there, they suffered no damage as a result of the malpractice. The court observed: "The [plaintiffs] argue that they could have received more damages if the case had been tried in Kentucky. However, the evidence, in our opinion, on this point is a matter of conjecture and speculation. It may have been a different case if the [plaintiffs] had tried their case in Indiana and had come away with patently inadequate damages. The fact is that they settled their case for $60,000.00. * * * It seems to us that the [plaintiffs’] argument as to damages is an exercise in the pyramiding of an inference upon an inference. Trying to predict what a jury might do at any given time or place is hazardous and is one of the vagaries of life.” (Mitchell v Transamerica Ins. Co., 551 SW2d 586, 588 [Ky].)
Another argument for requiring a client to try his underlying claim for damages to judgment first, is that otherwise a lawyer, in defending himself, would be obliged to use the information he originally obtained from his client as a result of their lawyer-client relationship. This would be so disruptive of the essential confidential relationship that it should not be encouraged.
However, an examination of this argument fails to support it. In every action involving professional malpractice the person sued is obliged to use information obtained from a client or patient in order to vindicate his professional judgment. Even the Code of Professional Responsibility specifically permits an attorney to use such information under such circumstances. *
Further, the lawyer is in a far better position to defend himself against a client’s claim for damages and prevent them from being inflated (see Haughey, Lawyers’ Malpractice: A Comparative Appraisal, 48 Notre Dame Lawyer 888, 893). Upon closer analysis, any rule which would require an injured client to liquidate his damages before being able to recover *242 from a lawyer for malpractice could be grossly unfair to the attorney. For example, the parties in the underlying action might agree upon a settlement figure under an arrangement which would permit the client to prove predetermined damages and the attorney would be powerless to do anything about it. This would not only enable the client to unfairly maximize his damages, but the final judgment would also be res judicata in the malpractice action (B. R. DeWitt, Inc. v Hall, 19 NY2d 141). Such a rule might well violate the attorney’s due process rights.
Accordingly, at least one court in New York has permitted a legal malpractice action to be instituted prior to the resolution of the underlying action (Reynolds v Picciano, 29 AD2d 1012) and other courts have similarly done so (Winter v Brown, 365 A2d 381 [DC Ct App]; Katzenberger v Bryan, 206 Va 78). This seems to be the better rule and will be applied here as well.
Nor is the plaintiff prevented by equitable estoppel from asserting that his claim is worth more than he settled for. There is no showing that the defendant was induced to rely on plaintiff’s words or conduct, that defendant changed his position in reliance thereon or that plaintiff will be unjustly enriched by attempting to avoid the obligations arising out of his acceptance of the benefits of the settlement (see 21 NY Jur, Estoppel, Ratification and Waiver, § 21).
For all of the foregoing reasons, the release by the plaintiff in the underlying action and the failure to proceed to judgment against Condor and Corso do not bar the plaintiff from maintaining this action.
Turning to the requirements of a legal malpractice action, it is elementary that in order to succeed the plaintiff must first show that he would have recovered in the underlying action and that the judgment could or would have been collected (Garguilo v Schunk, 58 AD2d 683, 684; Carpenter v Weichert, 51 AD2d 817, 818, mot for lv to app den 39 NY2d 708; Schmitt v McMillan, 175 App Div 799, 801; Gross v Eannace, 44 Misc 2d 797, 798; Leavy v Kramer, 34 Misc 2d 479, 480). This rule is followed in other jurisdictions as well (for extensive citation, see McDow v Dixon, 138 Ga App 338).
The nature of the action has been designated as a "lawsuit within a lawsuit” because the jury is called upon to decide what the outcome for the plaintiff would have been in the earlier case if he had been properly represented (Chocktoot v *243 Smith, 280 Ore 567; see, also, Coggin, Attorney Negligence * * * A Suit Within A Suit, 60 W Va L Rev 225, 233-236).
Thus, plaintiff must not only establish that he would have succeeded in the underlying action and that any judgment would be collectible, but must also show that his former attorney was negligent and that plaintiff would have succeeded in the first action but for his attorney’s malpractice (Vooth v McEachen, 181 NY 28, 32; Schmitt v McMillan, 175 App Div 799, supra; Carpenter v Weichert, 51 AD2d 817, supra). Stated differently, he must establish that his loss was proximately caused by the attorney’s negligence (Creative Inception v Andrews; 50 AD2d 553, Ann. 45 ALR2d 1, 19).
Contributory negligence will, here as elsewhere, affect recovery (see Rapuzzi v Stetson, 160 App Div 150; see, also, Werle v Rumsey, 278 NY 186, 188; Hallen and Levit, Legal Malpractice, § 172, pp 220-226). However, as of September 1, 1975, contributory negligence would no longer bar recovery but, rather, reduce damages to the extent of the culpable conduct (CPLR, art 14-A).
Without deciding the question here, it may well be that the question raised by the defendant of plaintiff’s contributory negligence in failing to appeal from the order denying the motion to increase the ad damnum as well as in settling without first investigating the collectibility of a judgment in excess of the insurance may be a question of law for the trial court to decide. The Oregon Court in Chocktoot v Smith (280 Ore 567, supra) divided the responsibilities of the court and jury in the "trial within a trial” between questions of law and questions of fact.
"The question what decision should have followed in the earlier case if the defendant attorneys had taken proper legal steps is a question of law for the court.
"The question what outcome should have followed if defendants had conducted a proper investigation, presentation (or exclusion) of evidence, or other steps bearing on a decision based on facts remains a question of fact for the jury * * * If the alleged negligence of an attorney in an earlier case involved both legal and factual elements, it would be necessary for the trial court to separate these elements and to instruct the jury accordingly.” (280 Ore 567, —.)
Whether a lawyer’s conduct constituted malpractice would, of course, be as in other tort actions a question of fact (Werle v Rumsey, 278 NY 186, supra; see, also, Siegel v Kranis, 29 *244 AD2d 477; Grago v Robertson, 49 AD2d 645). In this regard, although there do not appear to be any New York cases directly on point, the majority of jurisdictions allow the use of expert testimony to establish standard of care and whether the attorney’s conduct deviated from that standard (Shields v Campbell, 277 Ore 71; Hill v Okay Constr. Co., 252 NW2d 107 [Minn]; but cf. Baker v Beal, 225 NW2d 106 [Iowa], supra).
As to damages, they would be measured by the value of the claim lost (Lamprecht v Bien, 125 App Div 811; 7 Am Jur 2d, Attorney and Client, § 190, p 157, supra, Ann. 45 ALR2d 58, 63, supra). It may ultimately be determined that the amount of the plaintiffs settlement was well within the range of a jury’s verdict (see Mitchell v Transamerica Ins. Co., 551 SW2d 586, 588 [Ky], supra). However, this, too, is an issue of fact.
Although the settlement with Condor and Corso would operate as a defense, it would do so only to the extent of reducing the damages recovered, if any, in this action (see Mallen and Levit, Legal Malpractice, § 182, p 247; Katzenberger v Bryan, 206 Va 78, supra).
It should also be noted that there is a conflict in the case law as to whether recovery should be reduced by the amount of the contingent attorney’s fees that plaintiff would have been obliged to pay as a result of the recovery in the underlying action. An early New York case and some Federal decisions hold that the contingent fee must be deducted, whereas one Federal court, the District of Columbia, Minnesota and California hold to the contrary (cf. Childs v Comstock, 69 App Div 160; McGlone v Lacey, 288 F Supp 662; and Sitton v Clements, 257 F Supp 63, affd 385 F2d 869; with, Duncan v Lord, 409 F Supp 687; Christy v Saliterman, 288 Minn 144; Benard v Walkup, 272 Cal App 2d 595; and Winter v Brown, 365 A2d 381 [DC Ct App], supra). However, this is a question which is also best left for the trial court to decide.
Plaintiff has made out at least a prima facie showing that he had a potential recovery greater than the $130,000 sued for. Condor and Corso’s apparent negligence is demonstrated by plaintiffs factual claim that his vehicle was struck by the Condor vehicle going the wrong way on an exit ramp. At the time of the accident, which caused his permanent disability and forced retirement, plaintiff claims he was earn *245 ing approximately $14,000 a year at Kodak. He had been employed there for 27 years, he was only 54 years of age and had 11 years to go until he reached the mandatory retirement age of 65. He thus suffered the loss of future earnings alone of $154,000. In addition, plaintiff also claims loss of present earnings, property damage, substantial medical expenses, present and future permanent disability and pain and suffering.
Plaintiff has also raised as a sufficient issue of fact that a verdict in excess of the insurance policy limits would be collectible by proceeding against the assets of Condor and Corso for any excess over the insurance coverage. Condor is a small but active electronics firm, in business since 1967, owning equipment and tools and with a good credit rating.
Because the plaintiff has presented allegations which are factually sufficient to meet all of the foregoing proof requirements, defendant’s application for summary judgment is denied.
As to plaintiff’s cross motion, although defendant admits many of the allegations regarding his conduct of the personal injury litigation, he denies that these actions constitute legal malpractice, pointing out that he instituted suit against Condor and Corso in excess of the insurance policy proceeds and that Condor and Corso had no significant assets of their own which could satisfy any judgment over policy limits. Further, defendant states he did so in the exercise of his professional judgment and with knowledge of plaintiff’s injuries and financial loss. This is sufficient to create triable issues of fact as to the issue of malpractice.
Accordingly, plaintiff’s application for summary judgment is also denied.
Plaintiff’s application to add his wife, Virginia, as a party plaintiff is granted. Amendments to pleadings should be liberally granted (Bilhorn v Farlow, 60 AD2d 755). His application to increase the amount sued for is also granted. No statement of readiness has been filed and there is no showing of inordinate delay (Adams v Burkowski, 61 AD2d 1134; Allen v Pohl, 63 AD2d 1118), nor of prejudice sufficient to deny the application (Ryan v Collins, 33 AD2d 966; Allen v Pohl, supra).

 Subdivision (c) of Disciplinary Rule 4-101 of the American Bar Association Code of Professional Responsibility: "A lawyer may reveal * * * [4] Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associations against an accusation of wrongful conduct” (citing 2 Mechem, Agency [2d ed], § 2313 and 5 Jones, Evidence [2d ed], § 2165).