John F. BARRY, Plaintiff–Counter–Defendant–Appellant,

v.

LIDDLE, O'CONNOR, FINKELSTEIN & ROBINSON, Defendant–Counter–Claimant–Appellee.

No. 1738, Docket 95–9294.

United States Court of Appeals,
Second Circuit.

Argued July 19, 1996.

Decided Oct. 21, 1996.

Richard J.J. Scarola, Scarola & Reavis, New York City (Dalton K. Fine, of counsel), for Plaintiff–Counter–Defendant–Appellant.

John S. Siffert, Lankler Siffert & Wohl, New York City (David S. Jones, of counsel), for Defendant–Counter–Claimant–Appellee.

Before: WINTER and LEVAL, Circuit Judges, and THOMPSON, District Judge.*

WINTER, Circuit Judge:

John F. Barry brought this diversity action for legal malpractice and breach of contract against the law firm Liddle, O'Connor, Finkelstein & Robinson. Barry alleged that Liddle, O'Connor negligently advised him that his claim for unpaid compensation against his former employer, L.F. Rothschild & Co., a wholly-owned subsidiary of L.F. Rothschild Holdings, would not be barred by Rothschild & Co.'s bankruptcy proceedings. Both parties moved for summary judgment. In granting Liddle, O'Connor's cross-motion, the district court held that Barry's complaint failed to allege that he would have prevailed on his claim if he had been correctly advised by Liddle, O'Connor. The district court also held that Barry's claims regarding damages were so speculative as to fail as a matter of law. Barry appeals, and, for the reasons set forth below, we reverse.

## BACKGROUND

On appeal from a grant of summary judgment, we view the facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 92 (2d Cir.1994).

Barry is a Harvard Law School graduate, one-time Second Circuit law clerk, and former associate at Davis, Polk & Wardwell. He has also worked for a number of securities firms. In 1988, Barry went to work for Rothschild & Co. He claims that when he left in 1990, the firm owed him in excess of $2,000,000 in compensation. His claim is based largely on a memorandum to him from Gary Lieberman, his immediate superior at Rothschild & Co., that read:

Memorandum To: John Barry

From: Gary Lieberman G.L. (handwritten initials)

Re: Employment Agreement

Date: March 15, 1988

1. Salary $230,000, $150,000, $120,000 for Barry, Weeden and Johnson.

2. Minimum of 50% of pre tax revenues associated with Strategic Financing Group less full costs.

3. Ability to hire personnel at our reasonable discretion.

4. Three year term.

---

* Honorable Alvin W. Thompson, of the United States District Court for the District of Connecticut, sitting by designation.

5. Termination for cause defined as dereliction of duties, illegal or fraudulent act detrimental to L.F. Rothschild.

6. Obligation to be assigned to Stern Brothers if Rothschild merger is not consummated, with consent of J. Barry.

7. Titles are Managing Director, Principal and Senior Vice President for Barry, Weeden and Johnson, respectively.

8. Equity flip/golden parachute to be discussed (handwritten) J.B. (handwritten initials).

Barry's $2,000,000 claim is based on the formula, "Minimum of 50% of pre tax revenues associated with Strategic Financing Group less full costs." Barry claims that this memorandum constitutes an agreement that a formal employment contract corresponding to the Lieberman memo would be tendered by Rothschild & Co. and that the firm breached its contract in failing to do so.

In December 1990, after he had left Rothschild & Co., Barry sought legal services from Liddle, O'Connor in connection with claims against Rothschild & Co. and another prior employer, Merrill Lynch. The scope of the services Barry asked Liddle, O'Connor to perform is hotly disputed. Barry contends that he hired Liddle, O'Connor to obtain payment on his claim against Rothschild & Co. and that shortly thereafter he informed the law firm that Rothschild & Co. had filed a petition in bankruptcy. In a letter to Mr. Liddle dated February 5, 1991, Barry asked Liddle, O'Connor "to move as quickly as possible on each of these claims [the Rothschild and Merrill Lynch claims] before it becomes too late" and expressed concern about how long the cash still in his unit of Rothschild & Co. would be available to pay claims. Barry further asserts that Liddle, O'Connor then advised him that, because he had been a member of the securities industry, his claim would be arbitrated and that the six-year statute of limitations, not the bankruptcy bar date, applied to his claim. In contrast, Liddle, O'Connor maintains that Barry's explicit instructions to them limited the scope of their legal work to exclude the bankruptcy aspects of his claim.

In the meantime, the bankruptcy court had imposed a bar date of May 1, 1991, for claims against Rothschild & Co. The bankruptcy court informed neither Barry (who was not a listed creditor) nor Liddle, O'Connor of the bar date, and each denies knowing of it. Allegedly relying on Liddle, O'Connor's advice, Barry did not file a proof of claim before the bar date, and his claim was extinguished.

Barry states that he learned of the bar date in a casual conversation with a lawyer friend in October 1991. In December 1991, Barry made a *pro se* motion before the bankruptcy court for leave to file a late proof of claim on the ground of excusable neglect based on his reliance on Liddle, O'Connor's advice. After a hearing, Judge Lifland denied Barry's motion. *In re L.F. Rothschild Holdings Inc.*, Chapter 11 Case Nos. 89 B. 11598 and 91 B. 10055 (Bankr.S.D.N.Y. Jan. 22, 1992). The bankruptcy court found that "Barry was familiar with [Rothschild's] bankruptcy proceeding and the need to file a claim," that "[n]evertheless, Barry apparently deliberately determined not to file a claim," and hence that Barry had failed to show excusable neglect. *Id.*, slip op. at 2.

Barry then appealed from the denial of his motion to the district court. Judge Patterson upheld the bankruptcy court's order. *In re L.F. Rothschild Holdings Inc.*, 92 Civ. 1129, 1992 WL 200834 (S.D.N.Y. Aug.3, 1992). The district court noted Barry's close familial relationship to others involved in the bankruptcy proceedings (including a sister who filed a timely claim), his February 1991 letter to Liddle, O'Connor expressing urgency about the bankruptcy, and his sophisticated legal background. *Id.* at *5. After filing a notice of appeal, Barry settled his claim against Rothschild for $25,000 in exchange for, *inter alia,* dropping the appeal.

Barry then filed the present action against Liddle, O'Connor, alleging legal malpractice and breach of a contract for the competent performance of legal services. Liddle, O'Connor asserted a counterclaim for unpaid legal fees. After discovery was completed, Barry moved for summary judgment on the issue of whether Liddle, O'Connor breached the applicable duty of care. Liddle, O'Connor cross-moved for a dismissal of the com-

plaint or in the alternative for summary judgment.

The district court granted Liddle, O'Connor's cross-motion for summary judgment and dismissed Barry's complaint. *Barry v. Liddle, O'Connor, Finkelstein & Robinson,* 93 Civ. 8707 (CSH), 1995 WL 702381 at *5 (S.D.N.Y. Nov. 28, 1995). The court concluded that Barry "does not attempt to meet the 'but for' requirement by arguing that he would have won had defendant advised him correctly," *id.* at *3, and that "Barry's conclusory allegation that he may have been able to obtain a higher settlement is a matter of pure conjecture," *id.* at *4. Judgment was entered under Rule 54(b), Fed.R.Civ.P., to allow Barry to appeal (the counterclaim was still pending), and this appeal followed.

## DISCUSSION

■ We review a district court's grant of summary judgment *de novo. Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.,* 967 F.2d 742, 746 (2d Cir.1992). Summary judgment may be granted when, viewing the evidence in the light most favorable to the nonmoving party, it appears that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A diversity action based on attorney malpractice is a matter of state substantive law. *Banker v. Nighswander, Martin & Mitchell,* 37 F.3d 866, 871 (2d Cir.1994) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). New York law applies.

■ Under New York law, legal malpractice claims require a showing that negligence on the attorney's part proximately caused actual damage. *Luniewski v. Zeitlin,* 188 A.D.2d 642, 643, 591 N.Y.S.2d 524, 525–26 (1992). The causation element includes a "but for" requirement, i.e., that "the plaintiff would have been successful in the underlying action if the attorney had exercised due care." *Andrews Beverage Distributor, Inc. v. Stern,* 215 A.D.2d 706, 706, 627 N.Y.S.2d 423, 423 (1995).

■ The district court held that Barry's complaint failed to allege that he would have won on the claim but for the negligence, but rather sought recovery on a "lost opportunity" theory. *Barry,* 1995 WL 702381 at *3. The district court read the complaint as claiming only a loss of the ability to sue, not the loss of the value of the claim. *Id.* Barry's complaint, however, alleged that "defendant is liable to plaintiff for the value of plaintiff's claim that was lost as a consequence of that malpractice, and related consequential damages, in an amount in excess of $2,000,000 plus the interest due on such amount." This suffices as an allegation that Barry would have prevailed but for the alleged malpractice. And, in an affidavit submitted in support of his motion for summary judgment, Barry stated that "were it not for the Bar Date, [he] would have successfully collected the debt owed to [him] by Rothschild." Thus, we conclude that Barry is claiming the loss of the value of his claim.

■ The district court's alternative determination—that Barry's allegations and proof of the damages element of his case was entirely speculative—also rested in part on the belief that Barry was proceeding solely under a "lost opportunity" theory. The court noted that Barry had settled with Rothschild for $25,000 and that

> [w]ithout offering any sort of proof, Barry's conclusory allegation that he may have been able to obtain a higher settlement is a matter of pure conjecture and, as such, would be insufficient to support a verdict in his favor. This problem seems inherent in such a "lost opportunity" claim, because the exact value of a lost claim remains uncertain without allegations or proof of what the outcome of litigation would have been absent the alleged malpractice. In the absence of either allegation or proof, the claim is subject to summary disposition.

*Barry,* 1995 WL 702381 at *4. The court also found that Barry "has not provided evidence that any official contract existed." *Id.* at *1.

■ We believe that Barry has proffered enough evidence to survive a motion for summary judgment. First, there is a genuine issue of fact as to whether the parties intended to enter into a contract. The Lieberman

memorandum "Re: Employment Agreement" might be found by a trier of fact to constitute an enforceable agreement. Parties may be bound by an understanding between them even though they intend that a further, formal contract will be executed. *Shann v. Dunk*, 84 F.3d 73, 77–78 (2d Cir. 1996). It is true that the memo does not expressly recite that it is an employment agreement, is designated a "Memorandum," and refers to two individuals in addition to Barry. These facts may be used to rebut Barry's version of the memorandum's significance, but unresolved issues of fact remain nevertheless. Likewise, a handwritten annotation on the memo—"8. Equity flip/golden parachute to be discussed" with the initials "JB"—may be evidence that there was no meeting of the minds, but it does not compel that conclusion as a matter of law.

■ Nor do we find Barry's allegations and evidence of loss and damages so speculative as to warrant summary judgment. Barry, it is true, must offer more than speculation as to the loss sustained because of Liddle, O'Connor's alleged malpractice. *See Luniewski*, 188 A.D.2d at 643, 591 N.Y.S.2d at 526. But if we accept as true, as we must, Barry's claims about the advice he received and his reliance upon it, he would have made out a claim against Liddle, O'Connor for the difference between the $25,000 settlement and the value of the lost claim against Rothschild. *See N.A. Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy and Moe Levine*, 59 A.D.2d 551, 552–53, 397 N.Y.S.2d 142, 144 (1977) (concurring opinion) (legal malpractice action must stand or fall on own merits with no automatic waiver even for prior voluntary settlement of underlying action), *aff'd on concurring opinion*, 45 N.Y.S.2d 730, 408 N.Y.S.2d 475, 380 N.E.2d 302 (1978); *see also Mazzei v. Pokorny, Schrenzel & Pokorny*, 125 A.D.2d 374, 375, 509 N.Y.S.2d 100, 101 (1986) ("general release ... executed upon the settlement of the underlying action, does not preclude" subsequent attorney malpractice action).

■ In setting standards for determining whether a contractual price term—which the formula in the Lieberman memorandum allegedly constitutes—is too indefinite, New York law does not set a high standard for precision because:

> a price term is not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future, or contains no computational formula. Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage.

*Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp.*, 74 N.Y.2d 475, 483, 548 N.Y.S.2d 920, 923, 548 N.E.2d 203 (1989), *cert. denied*, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). Although the parties dispute the meaning and calculation of "revenues" and "full costs," we cannot say that the terms are so indefinite that there is, as a matter of law, no contract.

■ As an alternative ground for upholding the grant of summary judgment, Liddle, O'Connor urges that the denial of Barry's motion to file a late proof of claim collaterally estops him from alleging attorney malpractice. Judge Haight rejected this argument, *Barry*, 1995 WL 702381 at *5, and we agree.

In determining that Barry's failure to file his proof of claim was not excusable neglect, the bankruptcy court did not have to decide that there was no attorney malpractice. At the time of the bankruptcy and district courts' denial of Barry's motion, the standard in this circuit for excusable neglect—used for attempted filings of an out-of-time appeal and late proofs of claim—was a high one, requiring "unique or extraordinary circumstances." *See, e.g., In re O.P.M. Leasing Servs., Inc.*, 769 F.2d 911, 918 (2d Cir.1985) (out-of-time appeal); *In re Nutri*Bevco*, 117 B.R. 771, 785 (Bankr.S.D.N.Y.1990) (late proof of claim); *In re O.P.M. Leasing Servs., Inc.*, 48 B.R. 824, 830 (S.D.N.Y.1985) (same).

The existence of attorney malpractice was not inconsistent with a denial of an "excusable neglect" motion under the standard governing at the time.[1]  In *O.P.M.*, a law firm failed to notice the entry of judgment reported in the *New York Law Journal*, 769 F.2d at 912.  Although this might have constituted malpractice, the court upheld the lower court's determination that the neglect was not excusable.  In the present case, therefore, the bankruptcy court might have found no excusable neglect despite the presence of attorney malpractice.

We reverse.

1.  Since the disposition of Barry's motion, the Supreme Court has broadened the "excusable neglect" standard, holding that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993).