JED S. RAKOFF, U.S.D.J.
By Opinion and Order dated June 10, this Court, inter alia, denied the motion to dismiss of defendants Anne C. Vladeck and Vladeck, Raskin & Clark, P.C. (the "Vladeck Firm") with respect to plaintiff Alexander Prout's claims for legal malpractice. ECF No. 44. Now before the Court is the defendants' motion for reconsideration of that ruling or, alternatively, a request that the Court certify the issue for appeal under 28 U.S.C. § 1292(b). ECF No. 46. Plaintiff opposes. ECF No. 57.
Familiarity with all prior proceedings is here assumed. In brief, this case arises from defendants' representation of Prout in connection with his claims against his former employer, Invesco, Ltd. ("Invesco"), for whistleblower retaliation and violations of the Family and Medical Leave Act ("FMLA"). To plead an action against an attorney for legal malpractice under here applicable New York State law, a plaintiff, in addition to establishing privity between the parties, must allege facts that tend to show: (1) that the attorney acted negligently; (2) that the attorney's negligence was the proximate cause of a loss sustained by plaintiff; and (3) that as a result, plaintiff suffered actual and ascertainable damages. Baker v. Dorfman, 239 F.3d 415, 420 (2d Cir. 2000). Prout alleges that defendants negligently let the two-year statutes of limitations lapse on his claims for a non-willful violation of the FMLA and for retaliation under the Sarbanes-Oxley Act ("SOX"). In their motion to dismiss, defendants argued that, notwithstanding these plausible allegations, Prout could not establish a claim for legal malpractice because the statutes of limitations had not lapsed on two other claims he had covering the same behavior by Invesco: a claim for a willful violation of the FMLA and a claim for retaliation under the Dodd-Frank Act. The Court disagreed.
The standard for granting a motion for reconsideration under Local Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a *744 losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures Inc. v. Sirota, 700 F.Supp. 169, 170 (S.D.N.Y. 1988). Accordingly, motions that "simply regurgitate the arguments that this Court previously rejected" should be denied. Charter Oak Fire Ins. Co. ex rel. Milton Fabrics v. Nat'l Wholesale Liquidators, No. 99-cv-5756, 2003 WL 22455321, at *1 (S.D.N.Y. Oct. 29, 2003).
In the instant motion, defendants first argue that the Court "refus[ed] to consider documents attached to the Supplemental Declaration," at least four of which should have been considered. Memorandum of Law in Support of Defendants' Motion for Reconsideration or Amendment of the Court's June 10 Order to Include a Certification Under 28 U.S.C. § 1292(b) ("Def. Mem.") at 3, ECF No. 47. Specifically, defendants argue that the Court should have considered an August 11, 2017 letter from David Sanford of Sanford Heisler to counsel for Invesco, John Cambria of Alston & Bird LLP. See Second Supplemental Declaration of Anthony J. Proscia (Proscia Decl.) at Q, ECF No. 36; a September 7, 2017 letter from Cambria to Sanford, id. at Ex. R; and two mediation statements, id. at Exs. S, T.
Contrary to defendants' assertion, the Court did consider these documents, which were incorporated by reference in the Complaint, but did not regard them as relevant or otherwise warranting discussion. Indeed, defendants themselves only briefly mentioned these documents in their own motion to dismiss briefing. See, e.g., ECF No. 37 at 8 n.5, 14-15. In any event, the Court has once again looked at these documents and, having done so, concludes that they do not in any way alter the Court's prior decision.
Defendants next argue that the Court misstated the standard for settlements "effectively compelled" by the mistakes of counsel. Defendants claim that Prout had to plausibly allege, "as an added component of proximate cause, ... that Defendants' conduct had so prejudiced his ability to prevail on his claims ..., that Prout needed to accept whatever Invesco was willing to pay during pre-suit settlement negotiations." Def. Mem. at 5-6.
As an initial matter, defendants' motion for reconsideration does not even purport to bring any new cases to the Court's attention, and this by itself is a ground for denying this prong of their motion. Moreover, defendants, relying on the same cases already raised in their motion to dismiss briefing and addressed by the Court in its Opinion, simply once again misconstrue New York law. Contrary to defendants' position, a plaintiff who has settled his claims does not need to demonstrate that litigation would have been entirely futile in order to plausibly allege malpractice.[1] As a New York court explained in Titsworth v. Mondo, a plaintiff can establish a claim for legal malpractice, notwithstanding settlement of the underlying claims, by "show[ing] that he settled only because no other alternative existed or that the settlement was improvident or was reluctantly agreed to by him because the previous actions by his attorneys left him with no alternative." 95 Misc.2d 233, 407 N.Y.S.2d 793, 796 (Sup. Ct. 1978).
The facts in that case are instructive in applying this standard. There, plaintiff Titsworth's attorney allegedly erred by requesting *745 only $100,000 in damages in the complaint when he should have sought $500,000. After the Special Term denied Titsworth's motion to increase the ad damnum in his action to $500,000, Titsworth settled for $90,000. Id. at 794-95. Although the New York court found "much force to defendant's argument that the plaintiff, having accepted a settlement substantially less than the amount sued for where there was virtually no issue of liability, may not now require a court to speculate as to what a jury would have awarded," id. at 795, it ultimately concluded the Titsworth's malpractice claim survived summary judgment, id. at 799. That is, the court found that Titsworth could establish proximate cause even though, had he continued to pursue his claims through litigation, he would have prevailed.[2]
Furthermore, even assuming arguendo that proximate cause in this context requires a plaintiff to demonstrate that his attorney left him with claims so futile that they would be dismissed on a motion to dismiss, Def. Mem. at 6 (suggesting this standard), nonetheless Prout has still established proximate cause. While the Court's prior Opinion and Order may not have been totally clear on this point, the relevant question with respect to proximate cause is only whether defendants' negligence caused Prout to suffer a loss relating to his non-willful FMLA and SOX claims. It clearly did.[3] Because the statutes of limitations passed on those claims, those claims would not have survived a motion to dismiss. Prout thus had to accept whatever Invesco was willing to pay for those claims during negotiations. Prout's remaining claims for a willful violation of the FMLA and for retaliation under Dodd-Frank are relevant only to the issue of damages.
Turning to damages, defendants maintain that the Court overlooked certain allegations in the Second Amended Complaint in concluding that it was unclear whether Prout's SOX or Dodd-Frank claim would have afforded him greater relief. Drawing on allegations in the Second Amended Complaint regarding Prout's "back pay damages" and "loss of unvested stock" in Invesco, see Second Am. Compl. at ¶ 76-77, ECF No. 32, defendants argue that Prout's potential damages under SOX (backpay plus unvested stock) would have been approximately $7.13 million, without *746 interest, whereas his potential damages under Dodd-Frank would have exceeded $9 million. Def. Mem. at 14.
Prout responds that his potential damages under SOX and Dodd-Frank would actually have been $5.13 million and $5.06 million, respectively, because his backpay would have been offset by the approximately $2 million that he earned from other employment during the same period. Memorandum of Law in Opposition to Defendants' Motion for Reconsideration ("Opp. Mem.") at 12-13, ECF No. 57. Defendants respond in turn that Prout's Dodd-Frank recovery calculations mistakenly subtract his offset before, rather than after, doubling his gross backpay, and that Prout therefore could have recovered millions more on his Dodd-Frank claim than on his SOX claim. Def. Reply at 4-5.
Regardless of which party has correctly calculated Prout's potential recovery, there is no question that Prout has adequately alleged damages based on defendants' failure to timely file his non-willful FMLA and SOX claims. For purposes of alleging damages, the relevant question is not whether Prout would have been better off if he had pursued his Dodd-Frank claim instead of his SOX claim, or his willful FMLA claim instead of his non-willful FMLA claim; it is whether Prout would have been better off if he had pursued all four of his claims, rather than pursuing only two. Prout answers this question in the affirmative, and he plausibly alleges that the value of his case was reduced by over $1 million because defendants failed to timely file his non-willful FMLA and SOX claims. See Second Am. Compl. at ¶ 120.
On this point, defendants misread the Second Circuit's decision in Barry v. Liddle, O'Connor, Finkelstein & Robinson, 98 F.3d 36 (2d Cir. 1996), as "demonstrat[ing] that there is no such thing as a malpractice claim for lost bargaining power or settlement value." Def. Mem. at 8 n.7. The court's decision in Barry, however, does no more than suggest (without deciding) that a malpractice plaintiff cannot allege damages based on the "lost opportunity" to sue, id. at 39, where the "lost opportunity" to sue is defined as the "inherent value" associated with "the ability to press a claim," which "value exists 'apart from the payment of the claim,' " Barry v. Liddle, O'Connor, Finkelstein & Robinson, No. 93-cv-8707, 1995 WL 702381, at *3 (S.D.N.Y. Nov. 28, 1995), rev'd, 98 F.3d 36. Clearly Prout has not alleged damages based on the value that his non-willful FMLA and SOX claims carried "apart from the payment of the claim[s]." To the contrary, the claims were alleged to be so valuable precisely because of the payment they promised.
Finally, defendants ask that the Court certify the order for interlocutory appeal if it denies the motion for reconsideration. Pursuant to 28 U.S.C. § 1292(b), the Court may certify an immediate appeal of an interlocutory order if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." This provision imposes a high standard. See, e.g., Mills v. Everest Reinsurance Co., 771 F.Supp.2d 270, 273 (S.D.N.Y. 2009) (certification "requires more than a claim that the court's ruling was wrong"). Interlocutory appeals are "strongly disfavored in the federal system" because they "derail the orderly conduct of lawsuits and result in piecemeal and duplicative litigation." SEC v. Citigroup Global Markets Inc., 827 F.Supp.2d 336, 337 (S.D.N.Y. 2011). They should be "rare, and reserved for exceptional circumstances."
*747 Bellino v. JPMorgan Chase Bank, N.A., No. 14-cv-3139, 2017 WL 129021, at *2 (S.D.N.Y. Jan. 13, 2017) (internal quotations omitted).
Here, an interlocutory appeal is unwarranted because there is not a substantial ground for difference of opinion on any controlling question of law. As discussed above, even accepting defendants' interpretation of the relevant standard for establishing proximate cause, Prout has plausibly alleged proximate causation. The heart of defendants' disagreement with the Court's decision hinges on questions of fact that the Second Circuit could not "decide quickly and cleanly without having to study the record." Bellino, 2017 WL 129021, at *2.
For the foregoing reasons, defendants' motion for reconsideration and, alternatively, for an interlocutory appeal is denied. The Clerk is directed to close the entry at docket number 44.
SO ORDERED.

See Reply Memorandum of Law in Further Support of Defendants' Motion for Reconsideration or for Certification Under 28 U.S.C. § 1292(b) ("Def. Reply") at 1, ECF No. 64 (arguing that "a settlement cannot be 'effectively compelled by the mistakes of counsel' where successful litigation remains an option").

To the extent that Grace v. Law, 24 N.Y.3d 203, 997 N.Y.S.2d 334, 21 N.E.3d 995 (2014), is applicable, it is consistent with this analysis. In Grace, the New York Court of Appeals held that "prior to commencing a legal malpractice action, a party who is likely to succeed on appeal of the underlying action should be required to press an appeal. However, if the client is not likely to succeed, he or she may bring a legal malpractice action without first pursuing an appeal of the underlying action." Id., 997 N.Y.S.2d 334, 21 N.E.3d at 998. If, as plaintiff argued, this standard also applies to an action for legal malpractice brought by a party who has settled prior to commencing suit, then such a party need not demonstrate that his claims were absolutely futile to bring a legal malpractice action.

This case is therefore distinguishable from Somma v. Dansker & Aspromonte Assocs., 13 Misc.3d 1232(A), 831 N.Y.S.2d 356 (N.Y. Sup. Ct. 2006), aff'd, 44 A.D.3d 376, 843 N.Y.S.2d 577 (1st Dep't 2007), in which plaintiff's malpractice action was founded on his counsel's failure to "make claims for pain and suffering, loss of income, maintenance and cure," among other things, in a joint pre-trial order. Id. at *2. The court held that the plaintiff failed to allege proximate causation because plaintiff's subsequent counsel could have cured the errors of his previous counsel: the court might have granted a motion to amend the pre-trial order but subsequent counsel never filed one. Here, by contrast, there was no chance that a court would have excused the lapsed statutes of limitations on Prout's claims (nor do defendants contend otherwise).