557 A.2d 1349

**James L. HOOPER**

v.

**John GILL, et al.**

**No. 1311, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 1, 1989.

438

Allen H. Sachsel (Paul Wiesenfeld on the brief), Rockville, for appellant.

John S. Vander Woude (Shirlie Norris Lake and Eccleston and Wolf on the brief), Baltimore, for appellees.

Argued before GILBERT, C.J., and BLOOM and WENNER, JJ.

GILBERT, Chief Judge.

Dr. James Hooper in 1980 retained John Gill, Jr., a partner in the law firm of Gill & Sippel, for defense against charges of medicaid fraud. Dr. Hooper discharged the firm in 1981. Soon thereafter, Gill & Sippel claimed that $5,400.00 was owing in unpaid legal fees.

According to Dr. Hooper, Gill threatened that he would take certain actions if the outstanding portion of the bill was not paid. Dr. Hooper alleged that Gill claimed that he would inform the Attorney General's Office that a witness their office had previously interviewed lied during questioning, and that, if questioned further, the witness could aid the State in the criminal prosecution of Dr. Hooper.[1] In any event, Gill & Sippel sued Dr. Hooper for the additional attorney's fees.[2] The Circuit Court for Montgomery County granted Gill & Sippel's motion for judgment in the full amount, and Dr. Hooper appealed. A settlement was reached while the appeal was pending,[3] in consideration of which the firm obtained a General Mutual Release from Dr. Hooper of all claims and causes of action known and unknown.

The medicaid fraud case against Dr. Hooper was dismissed because the State could not prove a *prima facie* case. Thereafter, Dr. Hooper unsuccessfully sued the then Attorney General of Maryland and others. During dis-

---

**1.** Gill disputes that the conversation occurred, although through counsel he admitted that he did in fact disclose information to an Assistant Attorney General. According to what we were told on oral argument, Gill possessed for "several months" the knowledge of the witness's allegedly incomplete statement. Disclosure apparently came only after Dr. Hooper refused to pay the additional $5,400.00 although Gill denied that nonpayment motivated his revealing the matter to the prosecution.

**2.** The action was instituted in the District Court of Maryland for Montgomery County but removed to the circuit court pursuant to Dr. Hooper's jury trial demand. Although appellees originally sought $5,000, the jurisdictional limit of the District Court, upon the removal of the case to the circuit court, they amended their claim to $5,400.

**3.** We were informed that the matter was settled for $4,400.00.

covery proceedings in that particular case, a memorandum was found indicating that Gill had carried out his threat to relay information to the prosecutor. According to the memorandum, the prosecutor was prompted by Gill's revelation to re-interview the witness.

As a result of what he learned during discovery, Dr. Hooper filed the instant action against Gill, et al., in the Circuit Court for Montgomery County (Messitte, J.), alleging tortious and contractual breach of fiduciary duties, a violation of 42 U.S.C. § 1983, and fraud. Dr. Hooper also sought an equitable opening of the judgment in the already settled attorney's fee suit. Judge Messitte granted Gill's Motion For Judgment as to the breach of fiduciary duty claims, entered summary judgment in favor of Gill on both the fraud and 42 U.S.C. § 1983 allegations, and further granted Gill's motion to strike the claim seeking an equitable opening of the satisfied judgment. Aggrieved by the actions of the circuit court, Dr. Hooper has journeyed here where he raises four issues; namely, whether the trial judge erred in:

(1) excluding the expert testimony of Abraham Dash and in turn granting Gill's Motion for Judgment on the tortious and contractual breach of fiduciary duty counts;

(2) granting summary judgment in favor of Gill on the fraud claim;

(3) refusing to open and re-litigate the judgment in the fee suit; and

(4) granting Summary Judgment in favor of Gill on the 42 U.S.C. § 1983 claim.

(1)

■ The allegations involving tortious and contractual breach of fiduciary duty focus on alleged legal malpractice. In order to establish a cause of action against an attorney for legal malpractice, a plaintiff must prove: "(1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) loss to the client proximately caused by that neglect of

duty." *Flaherty v. Weinberg,* 303 Md. 116, 128, 492 A.2d 618 (1985).

■ Expert testimony is necessary in a legal malpractice case to establish the existence of a breach of a reasonable legal duty, except in that class of cases "where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts." *Central Cab Co. v. Clarke,* 259 Md. 542, 551, 270 A.2d 662 (1970); *Fishow v. Simpson,* 55 Md.App. 312, 318–319, 462 A.2d 540 (1983).

Dr. Hooper sought to introduce the expert testimony of Professor Abraham Dash in an attempt to establish Gill's tortious and contractual breach of fiduciary duty. Professor Dash advised the court that he was not qualified to testify as an expert as to whether Gill's disclosure to the Assistant Attorney General was a breach of the civil standard of care for an attorney. Dash stated that his expertise was limited to the attorneys' Code of Professional Responsibility. Nevertheless, Dr. Hooper's counsel claimed that he was going to rely on Dash's testimony to establish causes of action for breach of contract and tortious breach of duty.

Judge Messitte precluded Dash's testimony and granted Gill's Motion For Judgment. The court reasoned that Dr. Hooper was required to establish, through expert testimony, that Gill's action was a breach of fiduciary duty as a matter of law and not merely a breach of the Code of Professional Responsibility. Dr. Hooper contends that the trial judge erred in making that determination. He asserts that the Code of Professional Responsibility provisions pertaining to an attorney's fiduciary duty simply codify the common law. On that premise Dr. Hooper argues that expert testimony was not required, and that Gill was liable as a matter of law.[4]

---

4. In light of our disposition of this case, it is unnecessary to determine whether expert testimony is required concerning an ethical violation. *But see Fishman v. Brooks,* 396 Mass. 643, 487 N.E.2d 1377, 1381–82 (1986).

Maryland Rule 1230 currently contains a statement that the Rules of Professional Conduct do "not give rise to a cause of action."[5] No similar provision was embodied in the Code of Professional Responsibility in effect in 1981. *See* then Md.Rule 1230; Appendix F.

Maryland appellate courts do not appear to have previously decided whether an attorney's violation of the Code of Professional Responsibility gives rise to a civil cause of action for damages. Decisions from other jurisdictions, however, are instructive.

There appear to be at least three ways that courts have disposed of suits brought against attorneys for violating the Code of Professional Responsibility:

1. *The General Rule—No Cause of action.* This method holds that violation of the Code does not give rise to a civil cause of action. It has been adopted by the overwhelming majority of courts. *See Noble v. Sears, Roebuck & Co.,* 33 Cal.App.3d 654, 109 Cal.Rptr. 269 (1973); *Bickel v. Mackie,* 447 F.Supp. 1376 (N.D.Iowa 1978); *Brody v. Ruby,* 267 N.W.2d 902 (Iowa 1978); *Hill v. Willmott,* 561 S.W.2d 331 (Ky.App.1978); *Drago v. Buonaguria,* 46 N.Y. 2d 778, 413 N.Y.S.2d 910, 386 N.E.2d 821 (1978); *Bud Godfrey Pontiac, Inc. v. Roloff,* 291 Or. 318, 630 P.2d 840 (1981); *Martin v. Trevino,* 578 S.W.2d 763 (Tex.Civ.App. 1978); *Ayyildiz v. Kidd,* 220 Va. 1080, 266 S.E.2d 108 (1980). The basis for this rule, as stated by the Supreme Court of Oregon in *Bud Godfrey Pontiac, Inc.,* 630 P.2d at 848, is that:

---

**5.** Maryland's Rules of Professional Conduct expressly provide in the preamble that:

"Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability."

Md. Rule 1230; Appendix: The Maryland Lawyers' Rules of Professional Conduct, 479 (1989).

"(a) The statute or Code of Professional Responsibility was not intended to create a private cause of action. On the contrary, the sole intended remedy for a violation of such a statute or code is the imposition of discipline by disbarment, suspension or reprimand of the offending attorney. *See, e.g., Martin v. Trevino, supra,* at 770; *Bickel v. Mackie, supra,* at 1383; *Merritt–Chapman & Scott Corp. v. Elgin Coal, Inc.,* [358 F.Supp. 17 (E.D. Tenn.1972)] at 22; *Hill v. Willmott, supra,* at 333–34, and *Noble v. Sears, Roebuck & Co., supra,* 109 Cal.Rptr. at 271–72. *See also Brody v. Ruby,* ... at 907–08; *Spencer v. Burglass,* ... [337 So.2d 596 (La.App.1976)] at 600–01, and *Tingle v. Arnold, Cate & Allen,* ... [129 Ga.App. 134], 199 S.E.2d [260] at 263.

(b) Other remedies, such as malicious prosecution, adequately protect the public from harassment or abuse by unprofessional lawyers. *See, e.g., Nelson v. Miller,* ... [227 Kan. 271], 607 P.2d [438] at 451, and *Merritt–Chapman & Scott Corp. v. Elgin Coal, Inc.,* ... at 22.

(c) To expose attorneys to actions for damages for breach of ethical duties imposed by such statutes and codes would be contrary to the 'obvious public interest' in affording every citizen 'the utmost freedom of access to the courts.' *See, e.g., Lyddon v. Shaw,* ... [56 Ill.App.3d 815], 14 Ill.Dec. [489] at 494, 372 N.E.2d [685] at 690, and *Hill v. Willmott, supra,* at 334. *See also Brody v. Ruby, supra,* at 907."

2. *The Michigan Rule—Violation Rebuttable Evidence of Malpractice.* This particular method holds that violation of the Code of Professional Responsibility constitutes rebuttable evidence of malpractice. Michigan seems to be the only State that has adopted that manner of dealing with suits brought against attorneys for violations of the Code. *Lipton v. Boesky,* 110 Mich.App. 589, 313 N.W.2d 163 (1981). *See also Sawabini v. Desenberg,* 143 Mich.App. 373, 372 N.W.2d 559 (1985).

3. *The Massachusetts Rule—Violation No Cause of Action But Evidence of Negligence.* This resolution of the

problem was espoused by the Supreme Judicial Court of Massachusetts in *Fishman v. Brooks*, 396 Mass. 643, 487 N.E.2d 1377, 1381 (1986). Insofar as we have been able to determine, Massachusetts is the sole advocate of this particular treatment of civil actions against attorneys for Code violations. The court likened a violation of a Code provision to the violation of a statute, *i.e.*, liquor law, workers' compensation, and building codes. 487 N.E.2d at 1381.

■ Although we have, via *dicta*, articulated the three-fold methods by which courts have thus far dealt with civil suits based on violations of the Code of Professional Responsibility, we need not and do not decide what course Maryland will steer in these controversies. Our reason for declining to answer the specific question is that the issue is simply not viable because Dr. Hooper failed to prove any damages. His allegations, if true, fit squarely within the ambit of the Latin phrase: *injuria absque damno* (injury or wrong without damage).

The facts show that at the time Gill spoke with the Assistant Attorney General relative to the witness's allegedly incomplete statement an indictment had already been returned against Dr. Hooper. Thus, the information supplied by Gill did not contribute to the obtaining of the indictment.

The errant witness, although apparently re-interviewed, was not called to testify at the trial of Dr. Hooper on the medicaid fraud indictment. Therefore, it is reasonable to infer that whatever information the State may have learned as a result of the re-interview of the witness did not contribute to the State's case against the doctor. Even if it did, there nevertheless remains the one overriding factor in our analysis—the singular fact that Dr. Hooper was acquitted of the medicaid fraud charge.

As this case reaches us, it is apparent from the record that no damage to Dr. Hooper was proven to have occurred as the result of Gill's alleged breach of confidentiality. Since there were no damages, there can be no recovery.

There is, of course, the claim to be made that, even though actual damages were not shown, the doctor is nevertheless entitled to nominal damages as a result of the breach of confidence. We turn that contention aside because the amount recoverable, if actionable, is absolutely *de minimis* in view of the costs in judicial time of retrial on the sole issue of nominal damages.

### (2)

Dr. Hooper next contends that he was entitled to a return of the money he paid in settlement of the attorney fee suit because Gill fraudulently obtained the General Mutual Release. In the circuit court Dr. Hooper argued that the alleged breach of duty would have been a defense to Gill's suit for the fee. Judge Messitte disagreed. Since the disclosure by Gill did not cause any damage to Dr. Hooper, we affirm the trial court's ruling. Proof of compensatory damage directly resulting from an act is a necessary element of a cause of action grounded in fraud. *Schwartzbeck v. Loving Chevrolet*, 27 Md.App. 139, 339 A.2d 700 (1975).

Dr. Hooper also avers that Gill's failure to disclose his communication to the prosecutor concerning the allegedly evasive witness constituted fraud and invalidated the release that was signed in the settlement of the fee dispute litigation. Judge Messitte, however, did not decide the issue, and we do not because it is not properly before us. Md. Rule 8–131(a).

Judge Messitte ruled that, in order to prevail on the fraud count, Dr. Hooper needed to establish that: (a) he would not have settled the fee suit and executed the General Release if he had known of Gill's revelation to the prosecutor, and (b) he would have prevailed on appeal of the fee suit to this Court based solely on the record. The circuit court held that Dr. Hooper would not have prevailed on his appeal based solely on the record and, therefore, entered summary judgment in favor of Gill. We cannot say that Judge Messitte was in error.

### (3)

To reopen the satisfied judgment in the fee case, Dr. Hooper filed a petition for a Writ of Error *Coram Nobis* [6]. The petition was denied. This Court in *Hooper v. Gill & Sippel*, Per Curiam, No. 474, Sept. Term, 1988, filed December 8, 1988, affirmed the denial of writ on the ground that the circuit court did not abuse its discretion since the relief sought in the petition/motion was identical to the relief requested in this case. There, we observed that during oral argument Dr. Hooper's counsel conceded that, for purposes of that case, there was no difference between Md. Rule 2–535(b) and the Writ of Error *Coram Nobis*. Rule 2–535(b) provides: "(b) *Fraud, Mistake, Irregularity.*—On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

■ Assuming, *arguendo*, that fraud did occur, it most certainly took place after Dr. Hooper had discharged Gill and the latter's legal services were terminated. Gill was entitled to be paid compensation. The post-professional services fraud would not be a defense to a suit for the fees. Judge Messitte did not err in denying the doctor's petition for a Writ of Error *Coram Nobis*.

### (4)

■ In its pretrial rulings the circuit court granted summary judgment in favor of Gill on Dr. Hooper's 42 U.S.C. § 1983 claim. The court found that Dr. Hooper did not establish that Gill acted in concert with the Attorney General's Office. Hence, Gill could not have acted "under color of state law" since he held no State office. Because he did

---

**6.** *Black's Law Dictionary* 1444 (5th ed. 1979) defines writ of *error coram nobis* as:

"[a] common-law writ, the purpose of which is to correct a judgment in the same court in which it was rendered, on the ground of error of fact ... which fact did not appear of record, or was unknown to the court when judgment was pronounced, and which, if known, would have prevented the judgment...."

not act "under color of state law," there can be no recovery under the federal code.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.