387 F.3d 183
 Barbara RUBENS, Plaintiff-Appellant,
v.
Roy L. MASON, Mason, Ketterman & Cawood, a professional association, f/k/a Morgan, Ketterman & Morgan, P.A., Heather R. McCabe and Morgan, Shelsby, Carlo, Downs & Everton, f/k/a Mason, Ketterman & Morgan, P.A., Defendants-Appellees.
 Docket No. 03-9184.
 United States Court of Appeals, Second Circuit.
 Argued: August 26, 2004.
 Decided: October 26, 2004.
 
 Appeal from the United States District Court for the Southern District of New York, Denny Chin, J. COPYRIGHT MATERIAL OMITTED Michael B. Ronemus, Ronemus & Vilensky, New York, NY, for Plaintiff-Appellant.
 Richard E. Lerner, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York, NY, for Defendants-Appellees.
 Before: CABRANES, STRAUB, and WESLEY, Circuit Judges.
 STRAUB, Circuit Judge.
 
 
 1
 Plaintiff-Appellant Barbara Rubens appeals from a judgment of the United States District Court for the Southern District of New York (Denny Chin, Judge) entered October 7, 2003, dismissing Rubens's legal malpractice claim in its entirety, granting Defendants-Appellees Roy L. Mason and Mason, Ketterman & Cawood's counterclaim for costs and expenses incurred in their representation of Rubens in the arbitration that is the subject of this legal malpractice claim, and dismissing Defendants-Appellees' counterclaim for fees and costs incurred in their efforts to collect their expenses.[1]
 
 
 2
 We find that the District Court predicated its grant of summary judgment as to liability on an affidavit from the arbitrator who presided over the underlying arbitration, the probative value of which was substantially outweighed by the danger of unfair prejudice. The affidavit, therefore should not have been admitted. We therefore vacate the grant of summary judgment to the defendants on liability and remand to the District Court. We find further that the District Court did not exceed its allowable discretion in awarding to the defendants the costs and expenses they incurred in their representation of Rubens in the arbitration, and accordingly, we affirm that part of the District Court's judgment.
 
 BACKGROUND
 
 3
 Plaintiff-Appellant Barbara Rubens was fitted with a Dalkon Shield Intrauterine Device ("IUD") on March 23, 1973. In 1987, Rubens was hospitalized for pelvic inflammatory disease. Rubens's Dalkon Shield IUD was removed at that time. Rubens then brought a claim against the Dalkon Shield Claimants' Trust ("Trust") claiming that the Dalkon Shield had caused her pelvic inflammatory disease and that she had suffered infertility, depression, loss of income, and pain and suffering as a result.
 
 
 4
 Rubens decided to forgo litigation in favor of arbitration and retained attorney Michael Pretl to represent her in the arbitration. Rubens subsequently discharged Pretl and retained the law firm of Mason, Ketterman & Morgan, P.A. ("MKM") (the predecessor-in-interest to Morgan, Shelsby, Carlo, Downs & Everton) in June 1998. Attorney Roy L. Mason was Rubens's lead counsel. The arbitration was presided over by a single arbitrator, Blair C. Fensterstock. Fensterstock rendered a decision in favor of the Trust and against Rubens on October 1, 1998.
 
 
 5
 Rubens then instituted a legal malpractice claim against MKM and Mason in federal court in June, 2001 pursuant to 28 U.S.C. § 1332.[2] Rubens alleges that, but for the negligence of Mason and MKM, she would have won her claim against the Trust and been awarded damages in the amount of $3,520,000. Specifically, Rubens claims that Mason and MKM were negligent in: (1) stipulating to the admission of the Trust's chlamydia test results, which contradicted the results of an independent test that Rubens had had performed;[3] (2) failing to understand that the Trust's chlamydia test was negative and thus could not support the theory that chlamydia caused her pelvic inflammatory disease; (3) failing to call witnesses to prove that the Trust's chlamydia test was negative or to rebut the Trust's "biofilm defense;"[4] (4) failing to introduce the "Reichel presumption;"[5] and (5) failing timely to disclose expert witnesses, resulting in the preclusion of testimony crucial to prove the causal link between the Dalkon Shield and her injuries.
 
 
 6
 The parties cross-moved the District Court for summary judgment on the legal malpractice claim. The defendants moved for summary judgment on their counterclaim for costs and expenses incurred during their representation of Rubens in the arbitration. In support of their motion for summary judgment on liability, the defendants submitted an affidavit from Fensterstock, the arbitrator who presided over the arbitration of Rubens's claim against the Trust. In his affidavit, Fensterstock addressed each of Rubens's allegations of malpractice and attested that his adjudication of those claims would not have been different had the alleged malpractice not occurred. In a Memorandum Decision dated September 30, 2003, the District Court granted the defendants' motion for summary judgment on liability, dismissing Rubens's complaint in its entirety, granted the defendants' motion for summary judgment on their counterclaim for costs incurred in the arbitration, and denied the defendants' motion for costs incurred in attempting to recover Rubens's unpaid balance.
 
 I. The Fensterstock Affidavit
 
 7
 In its decision on liability, the District Court indicated that because "[t]he parties here do not contest that MKM, as Rubens's counsel, owes [her] a duty," it focused only on the issues of breach and proximate cause. Before addressing each claim of negligence specifically, the court stated its conclusion, based almost entirely on Fensterstock's affidavit:
 
 
 8
 Fensterstock, however, as the sole decisionmaker in the arbitration, provides a sworn statement that MKM's allegedly negligent behavior would have had no effect on the outcome of the arbitration. (See Fensterstock Aff.). Even assuming that MKM was negligent in its representation of Rubens, in light of Fensterstock's affidavit, no reasonable jury could conclude that Rubens would have prevailed at arbitration.
 
 
 9
 Rubens v. Mason, No. 01civ5004, 2003 WL 22234704, at *5 (S.D.N.Y. Sept.30, 2003) (emphasis added). The court then addressed each of Rubens's allegations of negligence. With regard to Rubens's claims that the defendants were negligent in admitting the chlamydia test results, failing to call certain witnesses, disclosing witnesses in an untimely fashion, and failing to introduce the Reichel presumption, the court reiterated its reliance on Fensterstock's affidavit to determine that "no reasonable jury could conclude that Rubens is able to prove either a breach of the duty to use reasonable care or proximate causation" and that summary judgment in the defendants' favor was proper. As for Rubens's claim that the defendants misunderstood that the results of the Trust's chlamydia test were negative, the District Court found that although Mason "did describe the Trust's test results as `positive'" he elicited testimony to the effect that a positive result could result from "cross-reactivity" rather than the presence of genital chlamydia. The court concluded, however, that "[e]ven assuming that Mason was confused and misinterpreted the Trust's test results as being positive, Fensterstock put such little weight on both sets of chlamydia test results that the alleged error would not have changed the ultimate result." Id. at *6.
 
 II. The Retainer Agreement
 
 10
 When she hired MKM to represent her in the arbitration, Rubens signed two retainer agreements that contain the same provision regarding the payment of costs and expenses:
 
 
 11
 Client agrees that she will be entirely reasonable [sic] for all costs and expenses in this litigation. The client understands that the costs and expenses could exceed $10,000.00 and that it will be necessary to pay for accommodations and expert witnesses. In addition, the client understands that some experts may require advance payment of their fees. Client accepts full responsibility for the payment of these costs and expense and agrees to indemnify Mason, Ketterman & Morgan if the firm incurs any expenses as a result of the client's failure to pay the costs and expenses in this case.
 
 
 12
 Rubens admits that she signed the retainer agreements, that she received at least some letters from MKM requesting payment, that she did not pay most of those bills, and that she did not respond to the letters requesting payment or contest any of the amounts due. In her opposition to the defendants' motion for summary judgment on costs and expenses, Rubens submitted an affidavit in which she claimed that she had not received some of the bills and that she believed some of the expenses listed were not properly billed to her case.
 
 
 13
 With regard to the defendants' counterclaim for these costs and expenses, the District Court found that Rubens did "not dispute the evidence setting forth the costs and expenses she owes for the arbitration" and concluded:
 
 
 14
 In the absence of any evidence putting into question the reasonableness of these costs, and because there are no disputed issues of material fact, I conclude that MKM is entitled to judgment against Rubens for $11,978.31 on its counterclaim for arbitration costs and expenses.
 
 
 15
 Rubens v. Mason, 2003 WL 22234704, at *9.
 
 
 16
 Judgment was entered on October 7, 2003. Rubens filed a timely notice of appeal on November 5, 2003.
 
 DISCUSSION
 
 17
 On appeal, Rubens argues that the grant of summary judgment dismissing her malpractice claim cannot stand because it was predicated on inadmissible evidence. Specifically, Rubens argues that the District Court improperly "prob[ed] the mental processes" of Fensterstock, the trier of fact below, in order to adjudicate the element of causation in the legal malpractice suit. Rubens also argues that the District Court erred in granting summary judgment to the defendants on their counterclaim for costs and expenses incurred in the underlying arbitration because her affidavit disputing these costs and expenses created a question of fact.
 
 
 18
 The defendants first argue that Rubens is precluded from raising an argument as to the admissibility of Fensterstock's affidavit on appeal because she did not move to strike the affidavit before the District Court. The defendants further argue that Fensterstock's affidavit is admissible because the propriety of his decision in the underlying arbitration is not at issue; thus, he is merely a witness to facts relevant to the issues in the legal malpractice suit. With regard to the award of costs and expenses, the defendants argue that Rubens cannot create a material issue of fact by submitting a conclusory affidavit.
 
 
 19
 We review a district court's grant of summary judgment de novo and determine whether the court properly concluded that there was no genuine issue of material fact so that the moving party was entitled to judgment as a matter of law. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir.), cert. denied, 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003). We review rulings on admissibility under Federal Rule of Evidence 403 for abuse of discretion. Leopold v. Baccarat, Inc., 174 F.3d 261, 269 (2d Cir.1999). The proper standard of review for the interpretation of the terms of the retainer agreement is the de novo standard for contract interpretation. Goodheart Clothing Co. v. Laura Goodman Enters., Inc., 962 F.2d 268, 273 (2d Cir.1992).
 
 
 20
 I. THE ARBITRATOR'S AFFIDAVIT WAS INADMISSIBLE AND THE DISTRICT COURT IMPROPERLY RELIED UPON IT
 
 
 21
 A. Rubens Adequately Preserved Her Objection To Fensterstock's Affidavit
 
 
 22
 The defendants argue that Rubens did not preserve her objection to the admission of Fensterstock's affidavit because the objections she made before the District Court focused on prohibiting Fensterstock from testifying at trial, rather that on striking the admission of his affidavit in support of summary judgment. This argument fails to acknowledge that in deciding a motion for summary judgment, a court may rely only on material that would be admissible at trial. Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir.1994). Thus, any argument that Fensterstock's testimony at trial would be inadmissible was also, necessarily, an argument that his testimony through affidavit in support of summary judgment was inadmissible.
 
 
 23
 Rubens argued for preclusion of Fensterstock's testimony in her opposition to the defendants' Motion for Summary Judgment and in an affidavit submitted in support thereof. She argued that allowing Fensterstock to testify would be prejudicial because he "acted as judge and jury" in the arbitration so that a fact-finder in the malpractice case "would see Mr. Fensterstock as the person who is supposed to be fair and neutral." She also argued that allowing Fensterstock to testify would usurp the role of the judge and jury in the malpractice suit: "it is the job of this judge and jury to make the legal and factual decisions." By these arguments Rubens raised the issue of the admissibility of Fensterstock's testimony sufficiently to preserve it for appeal. Cf. Albany Savings Bank, FSB v. Halpin, 117 F.3d 669, 672 (2d Cir.1997) (appellant adequately raised issue of contract release's ambiguity to preserve for appeal claim that parol evidence should be admitted).
 
 
 24
 B. Fensterstock's Affidavit Was Unduly Prejudicial
 
 
 25
 On a motion for summary judgment, a district court may rely only on material that would be admissible at trial. See Azrielli, 21 F.3d at 517. Of course, to be admissible, evidence must be relevant, sée Fed.R.Evid. 402, but relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice," Fed.R.Evid. 403.
 
 
 26
 In order to prevail on a claim of legal malpractice under New York law,[6] a client must demonstrate that the attorney was negligent, that the negligence was a proximate cause of the injury and that the client suffered actual and ascertainable damages. McCoy v. Feinman, 99 N.Y.2d 295, 301-02, 755 N.Y.S.2d 693, 697, 785 N.E.2d 714 (2002). An attorney is negligent if it is shown that he "`failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession.'" Id. at 301, 755 N.Y.S.2d at 697, 785 N.E.2d 714 (quoting Darby & Darby v. VSI Int'l, 95 N.Y.2d 308, 313, 716 N.Y.S.2d 378, 380-81, 739 N.E.2d 744 (2000)). "For a defendant in a legal malpractice case to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiff is unable to prove at least one of the essential elements." Crawford v. McBride, 303 A.D.2d 442, 442, 755 N.Y.S.2d 892, 892 (2d Dep't 2003) (mem.).
 
 
 27
 Because legal malpractice is a species of negligence, see W. Page Keeton et al., PROSSER AND KEETON ON TORTS § 32 (5th ed.1984), the question of causation presented is the objective, "reasonable person" standard, id. § 41 ("[I]t is enough [for plaintiff] to introduce evidence from which reasonable persons may conclude that it is more probable that the event was caused by the defendant than that it was not."). The questions to be resolved by the fact-finder in the legal malpractice action, therefore, are whether the lawyer fell below the applicable standard of care, and if so, whether a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence. See Zarin v. Reid & Priest, 184 A.D.2d 385, 386, 585 N.Y.S.2d 379, 381 (1st Dep't 1992) ("In order to establish the elements of proximate cause and actual damages in a malpractice case, the plaintiff must show that but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome."). The malpractice judge or jury must decide a "case within a case" and determine what the result would have been absent the alleged malpractice. See 5 Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE § 33.8 (5th ed.2000); Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 780 N.Y.S.2d 593, 596 (1st Dept. 2004) ("[T]o establish the elements of proximate cause and actual damages,... the client must meet a `case within the case' requirement, demonstrating that `but for' the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages.").
 
 
 28
 Here, the parties did not dispute that MKM and Mason owed Rubens a duty. On the issue of breach, the parties submitted competing expert affidavits. Rubens's expert opined that Mason "departed from applicable standards of legal practice" in several respects and that these departures "substantially contributed to Ms. Rubens losing her case at arbitration." The defendants' expert countered that these same acts were reasonable "strategic decision[s]." Determining whether Mason's alleged failures were negligent or merely reasonable tactical decisions presented a question of fact that could not be resolved on summary judgment. See Greene v. Payne, Wood & Littlejohn, 197 A.D.2d 664, 666, 602 N.Y.S.2d 883, 885 (2d Dep't 1993) (affirming denial of summary judgment where the question was whether defendants' failure to plead separately a pendant state law claim in federal court was negligent or "an honest mistake of judgment where the proper course of action was open to reasonable doubt") (internal quotation marks omitted). Thus, the dispositive issue on summary judgment became whether the defendants could demonstrate through admissible evidence that Rubens was unable to prove causation.
 
 
 29
 Fensterstock's affidavit addressed the subjective question of what Fensterstock himself would have decided if Mason had performed exactly as Rubens now alleges he should have performed. In response to Rubens's claim that Mason was negligent in failing timely to disclose expert witnesses, Fensterstock declared that he had reviewed the expert reports that Rubens claimed should have been admitted and that they "would not have changed my opinion." To Rubens's claim that Mason erroneously stipulated to the admission of the Trust's chlamydia test and misunderstood the results of Rubens's own test, Fensterstock responded that the competing chlamydia tests were a non-issue because "[e]ven if the chlamydia tests had not been presented to me, I would still have found in favor of the Trust because of the scientific uncertainty surrounding biofilm." He further averred that Mason's failure to argue that the Reichel presumption applied to Rubens's case could not have changed the result because he "was aware of the `Reichel presumption'" and determined that it was "not applicable to Ms. Rubens's case."
 
 
 30
 Fensterstock's pronouncements in the subsequent malpractice suit about what he would have decided absent the allegedly negligent acts carry undue weight because he was the sole decision-maker, in essence, the "judge" in the underlying arbitration. Cf. Georgou v. Fritzshall, 93 C 997, 1995 WL 248002, at *4 (N.D.Ill. Apr.26, 1995) (noting there is substantial risk that a jury will give too much weight to the testimony of a judge because his position and authority bestow an "imprimatur of character, credibility and reliability"); Merritt v. Reserve Ins. Co., 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 528 (1973) (in suit against insurer for bad faith in defense of personal injury action it was unduly prejudicial for judge who presided over personal injury action to testify as an expert witness with respect to matters that took place before him in his judicial capacity); Harline v. Barker, 912 P.2d 433, 441 (Utah 1996) (determining that it was error to consider on motion for summary judgment in malpractice suit against bankruptcy attorneys the testimony of judge who presided over the bankruptcy proceeding because the "marginal relevance" of that testimony was substantially outweighed by the prejudice created by the judge "`in effect, sid[ing] with one of the litigants in an ongoing proceeding'") (citation omitted). Admitting the testimony of the decision-maker below not only places "a heavy burden on the party opposing [that] testimony" because of that decision-maker's virtually unimpeachable credibility, but it becomes "practically impossible for a party to challenge the mental impressions of a [decision-maker], as his thought process is known to him alone." Georgou, 1995 WL 248002, at *4; see also Fayerweather v. Ritch, 195 U.S. 276, 307, 25 S.Ct. 58, 49 L.Ed. 193 (1904) (testimony given by trial judge as to what matters he considered six years earlier in adjudicating will dispute was inadmissible because "no testimony should be received except of open and tangible facts,—matters which are susceptible of evidence on both sides"). Indeed, the prejudicial effect of the affidavit is apparent from the District Court's conclusion that "in light of Fensterstock's affidavit, no reasonable jury could conclude that Rubens would have prevailed at arbitration." In essence, because of Fensterstock's affidavit, it became impossible for Rubens to introduce any evidence capable of creating a question of material fact on the issue of proximate cause.
 
 
 31
 The admission of Fensterstock's affidavit also violated well-settled law that testimony revealing the deliberative thought processes of judges, juries or arbitrators is inadmissible. See, e.g., Chicago, Burlington & Quincy Ry. Co. v. Babcock, 204 U.S. 585, 593, 27 S.Ct. 326, 51 L.Ed. 636 (1907) (examination of members of state tax board as to the reasons for their assessment is "wholly improper" as it would be to examine a jury, umpire, judge or arbitrator); Fayerweather, 195 U.S. at 307, 25 S.Ct. 58 (noting that a judgment should not be "overthrown or limited by the oral testimony of a judge or jury of what he had in mind at the time of the decision"); Hoeft v. MVL Group, 343 F.3d 57, 68 (2d Cir.2003) ("Permitting depositions of arbitrators regarding their mental processes would make arbitration only the starting point in the dispute resolution process and deprive arbitration awards of the last word on their authors' intentions."); Brownko Int'l Inc. v. Ogden Steel Co., 585 F.Supp. 1432, 1436 (S.D.N.Y.1983) (arbitrator may not be called as a witness in subsequent lawsuit to explain award); cf. Fed.R.Evid. 606(b).
 
 
 32
 The District Court erred in admitting Fensterstock's affidavit into evidence because its limited probative value was substantially outweighed by its prejudicial effect in that it had the potential to usurp the fact-finder's responsibilities in the trial within the malpractice trial. Indeed, any affidavit or testimony from an "expert" arbitrator or judge as to what should have happened in the proceeding that is the subject of subsequent malpractice litigation is likely more prejudicial than probative, because the affidavit or testimony would tend improperly to displace the fact-finder in the malpractice "case within a case." Additionally, the affidavit impermissibly revealed the deliberative thought processes of the decision-maker in the underlying arbitration. Because the District Court's conclusion that "no reasonable jury could conclude that Rubens is able to prove either a breach of the duty to use reasonable care or proximate causation" was premised on that inadmissible affidavit, that portion of the judgment granting the defendants' motion for summary judgment on liability must be vacated.
 
 
 33
 II. THE DISTRICT COURT PROPERLY GRANTED THE DEFENDANTS' COUNTERCLAIM FOR COSTS AND EXPENSES
 
 
 34
 The terms of the retainer agreement signed by Rubens are unambiguous as to Rubens's responsibility for costs and expenses.[7] Rubens does not allege that she was induced to sign the agreement through fraud, that she did not understand the terms of the agreement, or that the amount of costs and expenses was unreasonable. In opposition to the defendants' motion for summary judgment, Rubens submitted an unsupported affidavit in which she claimed that she did not receive certain bills (in contradiction to her prior deposition testimony) and that she believed certain of the line items did not relate to her case. Such allegations may not defeat an otherwise properly supported motion for summary judgment. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [the plaintiff's] own prior deposition testimony.").
 
 
 35
 The defendants' motion for summary judgment on their counterclaim was properly supported. The defendants submitted an affidavit from Mason that asserted: (1) numerous costs and expenses were incurred by MKM throughout the course of the arbitration; (2) Rubens never disputed her responsibility to pay these costs and expenses; (3) Rubens disputed only the amount of expert fees due to Dr. Winston Paley but no other costs or fees; (4) MKM sent numerous letters to Rubens requesting payment; (5) Rubens did not pay most of the costs and expenses; and as a result, (6) MKM incurred $11,978.31 in costs and expenses on her behalf. Annexed to Mason's affidavit as Exhibit B was a "true and correct accounting of the costs and expenses incurred by MKM on behalf of Ms. Rubens." The disbursements were made for the types of expenses generally considered "reasonable." See 1 Robert L. Rossi, ATTORNEYS' FEES § 1:27 (3d ed.2002) (noting that stenographic services, expert witness fees and attorney travel expenses have been deemed "reasonable" expenses). All bear the billing code assigned to the Rubens matter or reference the names of experts who testified at the arbitration, the United States Bankruptcy Court in Richmond, Virginia, which administers the Dalkon Shield Trust, or the city where the arbitration took place. In the face of such detailed documentation, Rubens's unsupported conjecture that certain of the items did not correspond to her case cannot defeat summary judgment.
 
 CONCLUSION
 
 36
 For the foregoing reasons, we affirm the judgment of the District Court granting reasonable costs and expenses to the defendants, vacate the judgment of the District Court awarding summary judgment on liability to the defendants and dismissing Rubens's legal malpractice claim, and remand to the District Court for further proceedings consistent with this opinion.
 
 
 37
 Each party shall bear its own costs on this appeal.
 
 
 
 Notes:
 
 
 [1]
 Defendants do not appeal the District Court's denial of their motion for summary judgment on the counterclaim for fees and costs incurred in attempting to collect expenses due to them under the retainer agreement
 
 
 [2]
 Rubens's claim against Defendant Heather R. McCabe was dismissed with prejudice in December, 2002
 
 
 [3]
 The Trust claimed that Rubens tested positive for chlamydia and that this disease, not the Dalkon Shield, was the cause of her pelvic inflammatory disease
 
 
 [4]
 The Trust argued that the Dalkon Shield could not have been the cause of Rubens's pelvic inflammatory disease because a film develops around the Shield within 30 days after insertion that prevents the so-called "wicking" of bacteria up the Shield's string into the uterus
 
 
 [5]
 The "Reichel presumption" is a rebuttable presumption in Rubens's favor. If Rubens proved that she was using the Dalkon Shield at the time she incurred pelvic inflammatory disease then the Dalkon Shield is presumed to have been the cause of the injury unless evidence to the contrary is presented. See Reichel v. Dalkon Shield Claimants Trust, 109 F.3d 965 (4th Cir.1997).
 
 
 [6]
 The District Court correctly applied New York law to the legal malpractice claim because although MKM is licensed in Maryland, the legal services were provided in New York, both parties applied New York law, and because no conflict exists between the law of New York and Maryland with respect to legal malpractice actionsCompare Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C., 133 F.Supp.2d 747, 755 (D.Md.2001) (citing Hooper v. Gill, 79 Md.App. 437, 557 A.2d 1349 (Md.1989)) with McCoy v. Feinman, 99 N.Y.2d 295, 301-02, 755 N.Y.S.2d 693, 697, 785 N.E.2d 714 (2002).
 
 
 [7]
 In contrast to the costs and expenses, which Rubens agreed to pay irrespective of the arbitration's outcome, the defendants represented Rubens on a contingency basis, agreeing to receive 40% of any recovery as their legal fee. Because Rubens did not prevail at arbitration, the defendants are due no legal fees and made no claim for such fees before the District Court. Rubens has not contested that, under the terms of the retainer agreement, she is liable for reimbursement of the costs and expenses that the defendants incurred in representing her at the arbitration regardless of the outcome of the arbitration proceeding. By affirming the District Court's summary judgment in favor of the defendants on this issue, and by remanding on the legal malpractice claim, we leave open the possibility that Rubens may be liable to reimburse the defendants for costs and expenses incurred in the course of their alleged malpractice