06-1213-cv
Rubens v. Mason

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: August 8, 2007                                     Decided: June 3, 2008)

Docket No. 06-1213-cv

_____

BARBARA RUBENS,

*Plaintiff-Appellant,*

v.

ROY L. MASON, MORGAN, SHELSBY, CARLO, DOWNS & EVERTON,
formerly known as Mason, Ketterman & Morgan, P.A.

*Defendants-Appellees,*

MASON, KETTERMAN & CAWOOD, formerly known as
Mason, Ketterman & Morgan, P.A., and HEATHER R. MCCABE,

*Defendants.*

_____

Before: CALABRESI, RAGGI and HALL, *Circuit Judges.*

_____

Appeal from a grant of summary judgment on an attorney malpractice claim.  Vacated and remanded.

MICHAEL B. RONEMUS, Ronemus & Vilensky, New York, N.Y., *for Plaintiff-Appellant.*

RICHARD E. LERNER, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP (Michael A. Carrasco, *on the brief*), *for Defendants-Appellees.*

_____

1

CALABRESI, *Circuit Judge*:

Plaintiff-Appellant Barbara Rubens appeals from an award of summary judgment granted to Defendants-Appellees Roy Mason, and his firm Morgan, Shelsby, Carlo, Downs & Everton, formerly known as Mason, Ketterman & Morgan (hereinafter "Appellees"), on an attorney malpractice claim. *See Rubens v. Mason*, 417 F. Supp. 2d 262 (S.D.N.Y. 2006).

Barbara Rubens was fitted with a Dalkon Shield Intrauterine Device in 1973 and was later hospitalized for pelvic inflammatory disease (PID), at which time the Shield was removed. She brought a claim against the Dalkon Shield Claimant's Trust (the "Trust") claiming that the Shield had caused her PID, and that she had suffered infertility, depression, loss of income, and pain and suffering as a result. Her husband brought a derivative claim. Under the options for redress provided by the Dalkon Shield Claims Resolution Facility, she and her husband each chose "Option 3," which allowed for a greater amount of compensatory damages. Rubens and her husband proceeded, separately, to arbitrate their claims, and Rubens's husband was awarded the maximum allowable compensatory damages in his arbitration proceeding. Rubens lost at arbitration, and her appeal to vacate the Arbitrator's decision was rejected by the reviewing court. *Rubens v. Dalkon Shield Claimants Trust*, 232 B.R. 855 (E.D. Va. 1999).

Rubens then brought this diversity action for attorney malpractice. The Appellees' first motion for summary judgment, granted by the district court in their favor, was reviewed by this Court in 2004. We determined that the summary judgment award was improperly based on testimony that sought to reveal the deliberative thought processes of the Arbitrator. We, therefore, remanded the case for further proceedings. *Rubens v. Mason* [*Rubens I*], 387 F.3d 183, 191 (2d Cir. 2004). In doing so, we also said that "[d]etermining whether Mason's alleged failures were negligent or merely reasonable tactical decisions presented a question of fact that could not be resolved on summary judgment." *Id.* at 190.

This Court reviews a grant of summary judgment *de novo*. *Barry v. Liddle, O'Connor,*

*Finkelstein & Robinson*, 98 F.3d 36, 39 (2d Cir. 1996). Summary judgment may be granted only if the court concludes that the case presents "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), and this Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Hemphill v. Schott*, 141 F.3d 412, 415 (2d Cir. 1998).

In a diversity action based on attorney malpractice, state substantive law, here that of New York, applies. *Barry*, 98 F.3d at 39; *see also Rubens I*, 387 F.3d at 186 n.6. To prevail on such a claim, Rubens must demonstrate "that the attorney was negligent, that the negligence was a proximate cause of the injury and that she suffered actual and ascertainable damages." *Rubens I*, 387 F.3d at 189 (citing *McCoy v. Feinman*, 99 N.Y.2d 295, 301-02, 755 N.Y.S.2d 693, 697 (2002)). In order for a defendant to succeed on summary judgment, it must establish "that the plaintiff is unable to prove at least one of the essential elements." *Crawford v. McBride*, 303 A.D.2d 442, 442, 755 N.Y.S.2d 892, 892 (2d Dep't 2003).

In granting summary judgment in favor of defendants on remand, the district court appears to have focused on the issue of negligence. It held, as a matter of law, that Mason made only tactical and strategic decisions which cannot constitute malpractice. That conclusion, however, was effectively foreclosed by this court's prior decision. *Rubens I* – as noted earlier – held that "[d]etermining whether Mason's alleged failures were negligent or merely reasonable tactical decisions presented a question of fact that could not be resolved on summary judgment." *Rubens I*, 387 F.3d at 190. The only issue we deemed still possible to be decided on summary judgment was that of causation, that is, assuming Mason was negligent for the purposes of deciding the defendant's summary judgment motion, whether Mason's acts of alleged negligence

were the proximate cause of Rubens's injuries.[1] By starkly juxtaposing these two aspects of the *Rubens I* decision, we perhaps bring its remand into sharper focus than it appeared in context to the district court. Otherwise, we would not expect the able district judge in this case to have focused unnecessarily on negligence while failing to address causation. Whatever the reason for any misunderstanding, we are obliged to identify error in the application of our mandate on remand. We therefore once again remand this case to the district court to assess whether the alleged acts of negligence were the proximate cause of Rubens's injuries.

To establish proximate cause, "the client must meet a 'case within a case' requirement," *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004), and must demonstrate that a reasonable fact-finder could conclude that a "reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence." *Rubens I*, 387 F.3d at 189.

Rubens alleges a number of different individual acts of negligence on the part of Mason: (1) his failure to introduce the *Reichel* presumption; (2) his decision (a) to enter into a stipulation to admit the Trust's chlamydia test, thus failing to prevent the Trust's test from being introduced, and (b) to introduce without stipulation Rubens's own (the Corio) chlamydia test; (3) his failure to realize that the Trust's test was actually negative; and (4) his failure to bring the proper expert witnesses to the arbitration.[2] To survive summary judgment on the element of causation, Rubens must show that but for at least one of these alleged acts of negligence, a reasonable fact-finder could conclude that she would have won in the underlying action. It is the final allegation that

---

[1] Whether or not Rubens suffered actual and ascertainable damages was not discussed by the district court nor briefed before this Court, accordingly, we do not here discuss it.

[2] Two additional claims of negligence relate to the admissibility of the Corio test: (5) Mason's failure timely to submit supplemental pre-hearing disclosures, and (6) his failure timely to disclose Dr. Corio as a witness. Because of our disposition of this appeal, discussion of these claims is unnecessary. A final claim, which Rubens did not raise below and, thus, we do not address, is that (7) Mason should have made a motion prior to arbitration to preclude the "junk science theory of biofilm."

presents Rubens's strongest case for causation, and we direct the district court on remand to focus on the role of the expert witnesses.

1.  *The* Reichel *Presumption*

When an individual who used a Dalkon Shield can show one of a number of various injuries, including PID, a presumption of causation in favor of the claimant is created. *Reichel v. Dalkon Shield Claimants Trust*, 109 F.3d 965, 967 (4th Cir. 1997). This presumption can be rebutted upon the introduction of evidence which would support a finding of the "non-existence of the presumed fact," at which point "the case is left in the same situation as if no presumption had ever been applicable." *Id.* at 968. Defendants contend that Mason's failure to introduce the *Reichel* presumption is of no significance given that the Trust (1) submitted evidence of chlamydia, another cause of PID, and (2) provided a discussion of "biofilm", the scientific theory which contradicts the evidence that the Dalkon Shield causes PID. The Trust having introduced evidence supporting two lines of reasoning by which the arbitrator could "find[] . . . the non-existence of cause of injury by use of the Dalkon Shield," *id.* at 968, the *Reichel* presumption could no longer operate. The fact that Mason did not introduce the presumption, therefore, made no difference to the manner in which the arbitrator evaluated the evidence of causation and cannot be a but for cause of plaintiff's damages in this case.[3]

---

[3] The malpractice case currently before us stems from an arbitration that took place in Virginia and that was affirmed by a federal district court in the Fourth Circuit. Accordingly, the Fourth Circuit's interpretation of the presumption of causation included in the document outlining Dalkon Shield claims-resolution procedures – the Dalkon Shield Claims Resolution Facility, section G.2 – is determinative. In *Reichel v. Dalkon Shield Claimants Trust*, 109 F.3d 965 (4th Cir. 1997) the Fourth Circuit read this presumption as operative only until the Trust introduced evidence of "the non-existence of cause of injury." *Id.* at 968. To resolve the instant case, we need not, and hence do not, decide whether that reading of section G.2 is correct, nor whether it would be binding on us in a case that did not arise in the Fourth Circuit.

5

2. *The Stipulation*

Rubens had two chlamydia tests – one taken by the Trust, allegedly positive, and one taken by her personal doctor, Dr. Corio, which was negative. She argues that the Corio test could have been admitted without stipulating – as Mason did – to the admission of the Trust's test. She further argues that had Mason not stipulated to the Trust's test, she would have been able to preclude the admission of the Trust's test. But even assuming that Mason would have been able to introduce the Corio test without the stipulation, there is no evidence whatever that the Trust's test would have been inadmissible. Rubens argues that the Trust did not introduce witnesses to authenticate its test. Such witnesses, however, were not unavailable, and had Mason objected to the test, there is ample evidence that the Trust would have provided the witnesses and other materials needed to authenticate it. Thus, even without the stipulation, Rubens would be left in the same situation as in the original arbitration, with both tests admitted. This incidence of Mason's alleged negligence cannot, therefore, be a but for cause of Rubens's loss.

3. *The "Positive" Result of the Trust's Test*

Rubens argues that had Mason properly understood that the "positive" result of the Trust's test was caused by "cross-reactivity" of a different, non-PID causing, strand of chlamydia, she would have won in arbitration. But, had Mason nullified the Trust's test by so arguing, and by adducing available evidence to that effect, thereby preventing the Trust from showing that chlamydia caused Rubens's PID, the Trust could still have relied on the biofilm theory to rebut the argument (and any *Reichel* presumption) that the Shield caused the PID. Since the Arbitrator found that Rubens had "failed to adequately rebut the biofilm theory," there is not sufficient evidence on the basis of which a reasonable juror could have found in Rubens's

6

favor had Mason better addressed "cross-reactivity."[4]

4. *Failure to Provide Expert Witnesses*

Rubens, however, also alleges that Mason was negligent in failing to call Dr. Sweet as an expert witness. This failure allegedly prevented the Arbitrator from hearing critical testimony as to the two areas vitally important to the Trust's rebuttal of Rubens's case. Rubens contends that Dr. Sweet's testimony would have provided the "cross-reactivity" explanation for the "positive" result of the Trust's chlamydia test *and that, he would also have testified as to the lack of applicability of the Trust's biofilm theory in this case.* Appellees argue, in response, that Dr. Sweet's testimony would have only been "surplusage", due to the testimony, on these issues, of Drs. Paley and Dodek. That may be, but it is anything but obvious, as are other questions, such as whether Dr. Sweet would have been admitted as an expert witness. It is with respect to these matters that the district court must begin the causation analysis we earlier asked it to undertake. Would the Trust's evidence of an alternative source of Rubens's PID or of a theory disproving the Dalkon Shield as a cause have undercut plaintiff's proof of causation had Dr. Sweet testified? Further submissions and, possible, even record development, may be necessary on these and related points. Accordingly, we leave all this to the district court to address on remand.

The judgment of the district court is therefore VACATED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

---

[4] Once again, the precise statement of the question of causation at summary judgment in an attorney malpractice claim is: was there sufficient evidence so that a reasonable jury *could* find that had that evidence been before the fact-finder in the underlying action, that fact-finder (here, the Arbitrator) *would* have found in favor of the plaintiff?