17-619-cv
*Barone v. United States*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of January, two thousand eighteen.

PRESENT:    PIERRE N. LEVAL,
             GUIDO CALABRESI,
             JOSÉ A. CABRANES,
                        *Circuit Judges.*

---

JOSEPH S. BARONE,

          *Plaintiff-Appellant,*                     17-619-cv

          v.

UNITED STATES OF AMERICA, SPECIAL AGENT MICHAEL GAETA, SPECIAL AGENT GREGORY MICELI, SPECIAL AGENT MICHAEL TROMBETTA, in their official capacities as agents of the Federal Bureau of Investigation and in their individual capacities,

          *Defendants-Appellees.*\*

---

**FOR PLAINTIFF-APPELLANT:**          MARK A. WEISSMAN, Herzfeld & Rubin, P.C., New York, NY.

---

\* The Clerk of Court is directed to amend the caption as shown above.

1

**FOR DEFENDANTS-APPELLEES:**                    REBECCA S. TINIO, Assistant United
                                                States Attorney (Benjamin H. Torrance,
                                                Assistant United States Attorney, *on the
                                                brief*), *for* Joon H. Kim, Acting United
                                                States Attorney, Southern District of New
                                                York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Andrew J. Peck, *Magistrate Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 6, 2017 judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiff-appellant Joseph S. Barone appeals from a February 6, 2017 judgment in favor of defendants-appellees United States of America and FBI Special Agents Michael Gaeta, Gregory Miceli, and Michael Trombetta ("Defendants"). This case stems from Barone's arrest and prosecution for involvement in an alleged murder-for-hire plot. After the government failed to attain a conviction, Barone brought various claims against Defendants under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) ("*Bivens*"). The District Court dismissed some claims and later granted summary judgment to Defendants on the balance. Upon review, we affirm. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## BACKGROUND

### I.      Barone's History as an FBI Source and the Murder for Hire Plot

In 1993, Barone became what is today known as a "confidential human source" for the FBI, and for years served the agency by gathering evidence against some of New York's organized crime families. During Barone's time as a confidential human source, the FBI occasionally granted him authorization to commit "otherwise illegal activity," or "OIA," to facilitate his collection of evidence. Each OIA authorization lasted for ninety days and included a "specific description of authorized otherwise illegal activity." App'x at 1356–57. Pursuant to the OIA authorizations, "under no circumstances" could Barone "initiate or instigate a plan or strategy to commit a federal, state or local offense." *Id.* at 1358. And if he learned of such plans and did not report them "immediately," he could be subject to "full criminal prosecution." *Id.*

In late 1999, Tony Piliero approached Barone about killing two individuals: "Cliff" and "another individual in Connecticut with whom [Piliero] was angry." App'x at 1323. Barone reported this encounter to his FBI handler, who in turn memorialized it in a Form 302. *Id.* Barone expressed doubt about Piliero's sincerity, but promised to alert his handler if Piliero contacted him again. *Id.*

2

Nine years passed. Then in 2008 an informant for the New York Police Department, Michael Cooks, told his handler about a murder plot involving Piliero and Barone. Sometime in the summer of 2008, Piliero and Barone had allegedly hatched a plot to murder one of Piliero's former employees, Douglas Agnessanto, on whom Piliero had taken out a life insurance policy. Barone asked Cooks to carry out the deed, and gave Cooks $1,000 and Agnessanto's personal information, including his address and Social Security number. Cooks proceeded to surveil Agnessanto's house.

In early January 2009, the FBI recorded a call that Cooks made to Barone. In it, Barone informed Cooks that Agnessanto's life insurance policy expired in February, and so the murder had to "happen within the next week or two." App'x at 886. Barone also assured Cooks that he was ready to pay him $50,000, provided Cooks perpetrated the crime "the right way." *Id.* at 1460. At a subsequent meeting on January 9, Barone reiterated that Agnessanto had to be murdered before February, and said that he would provide Cooks a gun with "six shots." *Id.* at 1490.

The FBI arrested Barone later that day. At the time of his arrest, Barone had not told his FBI handlers about the murder-for-hire plot. *Id.* at 876–77, 884.

## II.    Post-Arrest and Trial

After his arrest, Barone agreed to help the FBI build its case against Piliero. To provide cover for Barone, the FBI had him call a member of the Genovese crime family to say he had been arrested. Barone signed a form stating that he consented to making the call "without threats or promises of any kind." App'x at 1729.

Barone's identity as a cooperating witness nevertheless became public shortly after the complaint against Piliero was filed. The complaint, which was drafted by an AUSA and sworn out by Defendant Miceli, referred to Barone as "CC-1." *Id.* at 1818. The complaint further noted that CC-1 had been arrested on "January 9, 2009 . . . outside his home in Westchester, New York." *Id.* at 1819. Based on this information, a local newspaper identified Barone as the cooperating witness against Piliero. Concerned about Barone's safety following the revelation, the Federal Bureau of Prisons moved Barone out of the general population and into the Special Housing Unit ("SHU"). There, Barone was subject to "administrative detention," "a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of inmates." *Id.* at 94.

Barone and Piliero were tried before a jury in July 2010 for, *inter alia*, plotting murder for hire and conspiracy. The jury ultimately acquitted Barone and Piliero on the murder-for-hire charge, but failed to reach a verdict on the conspiracy charge. The District Court later entered a *nolle prosequi* on the conspiracy charge.

3

### III. The Instant Litigation

Barone then brought the instant action. In his amended complaint against the United States and the agent Defendants, Barone alleged seven causes of action: FTCA claims for (1) malicious prosecution; (2) intentional and (3) negligent infliction of emotional distress; (4) prima facie tort and (5) negligence relating to Barone's detention in the SHU; (6) a *Bivens* claim for malicious prosecution; and (7) a *Bivens* due process claim relating to Barone's detention in the SHU. The District Court dismissed the claims for negligent infliction of emotional distress, prima facie tort, and negligence relating to Barone's detention in the SHU. The other four claims were allowed to proceed to discovery. The District Court later granted summary judgment to Defendants on the surviving claims.

Barone appeals the District Court's grant of summary judgment to Defendants on (1) the FTCA malicious prosecution claim; (2) the *Bivens* malicious prosecution claim; (3) the FTCA intentional infliction of emotional distress claim; and (4) the *Bivens* due process claim. He also appeals (5) the dismissal of the FTCA claim for negligence relating to his detention in the SHU.

### DISCUSSION

We review the District Court's award of summary judgment *de novo*, "constru[ing] the evidence in the light most favorable to the [losing party]" and "drawing all reasonable inferences and resolving all ambiguities in [its] favor." *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017) (internal quotation marks omitted). We "will affirm only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 86 (2d Cir. 2016) (internal quotation marks omitted). To establish a genuine dispute, "[t]he nonmoving party must set forth specific facts," and cannot rely on conclusory allegations. *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008) (internal quotation marks omitted).

We also review *de novo* the District Court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

### I. Malicious Prosecution Claims

Barone argues that, as a confidential informant, he was authorized by the FBI to engage in the murder-for-hire plot, thus negating probable cause for the prosecution. Barone's tale finds no support in the evidence. We thus conclude that the District Court was correct to grant summary judgment for Defendants on the malicious prosecution claims because there was no disputed issue of fact capable of negating the Defendants' showing of probable cause.

"The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal

4

proceeding and (4) actual malice." *Torres v. Jones*, 26 N.Y.3d 742, 760 (2016). "Probable cause is defined as such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Perryman v. Vill. of Saranac Lake*, 839 N.Y.S.2d 290, 292 (3d Dep't 2007).

Defendants undoubtedly had probable cause to prosecute Barone for the murder-for-hire plot. Between the summer of 2008, when he and Piliero first discussed the murder, and January 2009, when he was arrested, Barone engaged in a course of conduct evidencing a clear intent to have Agnessanto murdered. During this half-year period, Barone approached Cooks about the murder, paid Cooks $1,000 to surveil Agnessanto's house, planned the mechanics of the murder in macabre detail, pressured Cooks to complete the crime within weeks, and promised to pay Cooks $50,000 when the crime was complete. All the while, Barone provided the FBI with *no* information about the impending crime.

Yet Barone argues that the FBI gave all this its blessings. As evidence, he points to the murder-for-hire plot he reported in the January 2000 Form 302, which he asserts is somehow related to the murder for hire to be committed in January 2009. This claim is belied by the Form 302 itself, which was not only from nine years earlier, but makes no mention of a murder for insurance proceeds. Nor is his claim of authorization supported by the expired OIA authorization forms, which expressly prohibited him from "initiat[ing] or instigat[ing] a plan or strategy to commit a federal, state or local offense," and required him to report crimes he learned of "immediately." App'x at 1358.

Simply put, there was no disputed issue of fact capable of negating the probable cause that justified the prosecution. Furthermore, the individual Defendants showed entitlement to have the claim of malicious prosecution dismissed by reason of their qualified immunity as their behavior did not violate any clearly established law at the time. We thus conclude that the District Court properly granted Defendants summary judgment on the malicious prosecution claims.

## II. The Intentional Infliction of Emotional Distress, *Bivens* Due Process, and Negligence Claims

Barone's FTCA intentional infliction of emotional distress and *Bivens* due process claims fare no better. According to Barone, agent Defendants recklessly or intentionally disclosed his identity as an FBI informant, thus placing him in physical danger. Specifically, Barone argues that the agent Defendants forced him to make the phone call to the member of the Genovese crime family, and the agent Defendants were responsible for the inclusion of identifying information in the complaint against Piliero. But Barone consented in writing to making the phone call, and the complaint was drafted by an AUSA, not the agent Defendants. The District Court thus properly granted summary judgment for Defendants on these claims.

Finally, we conclude that the District Court correctly held that Barone's negligent infliction of emotional distress claim falls within the discretionary-function exception for the FTCA. *See* 28 U.S.C. § 2680(a).

## CONCLUSION

We have reviewed all of the arguments raised by Barone on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the February 6, 2017 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk