**25-1284-cv**
*Ultimate Nutrition, Inc. v. Leprino Foods Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand twenty-six.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> BARRINGTON D. PARKER,
> MYRNA PÉREZ,
> *Circuit Judges*.

———————————————————————————

ULTIMATE NUTRITION, INC.,

> *Plaintiff-Appellant*,

v.                                                                      25-1284-cv

LEPRINO FOODS COMPANY,

> *Defendant-Appellee.*

———————————————————————————

For Plaintiff-Appellant:          IRVE J. GOLDMAN (Monte E. Frank, *on the brief*), Pullman & Comley LLC, Bridgeport, Connecticut.

For Defendant-Appellee:          WILLIAM C. BRITTAN (Margaret R. Pflueger, *on the brief*), Campbell Killin Brittan & Ray, LLC, Denver, Colorado; Kim E. Rinehart, *on the brief*, Wiggin and Dana LLP, New Haven, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Ultimate Nutrition, Inc. ("UNI") appeals from the April 16, 2025 judgment of the United States District Court for the District of Connecticut (Hall, *J.*), granting summary judgment in favor of Leprino Foods Company ("Leprino") on all counts.

On appeal, UNI argues that the district court erred in holding that (1) the alleged implied-in-fact supply agreement is unenforceable under Conn. Gen. Stat. § 42a-2-201(1), (2) the reasonable notice requirement of Conn. Gen. Stat. § 42a-2-309(3) does not apply absent an underlying enforceable contract, (3) Leprino's denial of UNI's requests to roll over its product orders into subsequent quarters did not constitute a breach of the parties' express contracts, and (4) Leprino was entitled to summary judgment on UNI's remaining claims.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we discuss here only as necessary to explain our decision to **AFFIRM**.

\* \* \*

We review a district court's grant of summary judgment *de novo*.  *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008).

I. **Whether the UCC statute of frauds renders the alleged implied-in-fact supply agreement unenforceable.**

UNI does not challenge the district court's conclusion that the alleged implied-in-fact supply agreement fails to satisfy the requirements of Conn. Gen. Stat. § 42a-2-201(1).  It argues

2

instead that the alleged supply agreement is not subject to § 42a-2-201(1) and that Leprino is equitably estopped from invoking the statute of frauds. We disagree.

At the start, UNI characterizes the alleged supply agreement as an agreement to engage in a "process" of negotiation. It contends that, although the alleged agreement is a "contract" governed by Article 2, it is not a "contract for sale" and therefore is not subject to § 42a-2-201(1). *See* §§ 42a-2-106(1) (defining "contract" and "contract for sale"), 42a-2-201(1) (applying the statute of frauds to "a contract for the sale of goods"). UNI did not raise this argument in the district court. We therefore treat UNI's new argument as forfeited and decline to consider it. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (quoting *Bogle–Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006))).

Nor can UNI avoid the statute of frauds by invoking the doctrine of equitable estoppel. Connecticut courts have not squarely addressed whether the common law doctrine of equitable estoppel is displaced by the "part performance" exception of § 42a-2-201(3)(c),[1] which specifically addresses the limited circumstances in which part performance permits enforcement of an Article 2 contract notwithstanding noncompliance with the statute of frauds.[2] As UNI acknowledges, however, part performance remains an element of equitable estoppel under

---

[1] UNI's reliance on *East River Energy, Inc. v. Gaylord Hospital, Inc.* is misplaced. That case addressed the distinct doctrine of promissory estoppel, which is a mechanism for enforcing a promise absent consideration. *See E. River Energy, Inc. v. Gaylord Hosp., Inc.*, No. CV095029078S, 2011 WL 3891508, at *3 (Conn. Super. Ct. Aug. 4, 2011); *see also Glazer v. Dress Barn, Inc.,* 274 Conn. 33, 89 n.38 (2005) (noting the Connecticut Supreme Court "previously has not addressed whether promises that otherwise would be subject to the requirements of the statute of frauds may be enforced on promissory estoppel grounds in the absence of compliance with the statute of frauds"). Even if *East River* correctly concludes that § 42a-2-201(1) does not displace the doctrine of promissory estoppel, it does not follow that the same conclusion applies as to equitable estoppel.

[2] Section 42a-2-201(3)(c) provides that "a contract which does not satisfy the requirements of [the statute of frauds] but which is valid in other respects is enforceable . . . with respect to goods for which payment has been made and accepted or which have been received and accepted."

Connecticut law.  Because common law may supplement but not supplant the Code, we agree with the district court that § 42a-2-201(3)(c) likely displaces the common law doctrine of equitable estoppel in the circumstances here.  *See* U.C.C. § 1-103(b) cmt. 2 (stating that principles of common law and equity may not supplant provisions of the UCC unless a specific provision provides otherwise, and that in the absence of such a provision, the UCC preempts common law that is inconsistent with its provisions); *see also Bead Chain Mfg. Co. v. Saxton Products, Inc.*, 183 Conn. 266, 270 (1981) ("[S]upplemental bodies of law cannot displace those provisions of the [UCC] that are directly applicable.").

Moreover, even assuming *arguendo* that the common law doctrine of equitable estoppel could supplement § 42a-2-201(3)(c) in a case like this, UNI has not shown that either § 42a-2-201(3)(c) or the doctrine of equitable estoppel is applicable.  As to the UCC, UNI does not satisfy § 42a-2-201(3)(c) because it does not seek to enforce the agreement with respect to any goods that were paid for and accepted or received and accepted.  And even if equitable estoppel remained available, Connecticut law "require[s] that the party seeking to avoid the statute must demonstrate acts that constitute 'part performance' of the contract."  *Glazer,* 274 Conn. at 60.  The record does not raise a material issue of fact as to part performance under Connecticut's doctrine of equitable estoppel.  *See id.* at 62 (describing the elements required for part performance).  UNI therefore cannot avoid the statute of frauds on an equitable estoppel theory.

II.     **Whether UNI's claim under Conn. Gen. Stat. § 42a-2-309(3) is viable even if the underlying agreement is unenforceable.**

UNI next contends that even if the alleged implied-in-fact supply agreement is unenforceable under § 42a-2-201(1), UNI may still maintain a claim under § 42a-2-309(3), which provides that "[t]ermination of a contract by one party except on the happening of an agreed event

4

requires that reasonable notification be received by the other party."  We agree with the district court that UNI cannot maintain a claim under § 42a-2-309(3) if the underlying agreement is unenforceable.

In support of its argument, UNI points to cases recognizing that an enforceable implied-in-fact contract is subject to § 42a-2-309(3)'s notice requirement.  But those cases do not address whether § 42a-2-309(3) provides an independent basis for liability if the underlying agreement is unenforceable under § 42a-2-201(1).

UNI's reliance on Comment 4 to § 42a-2-201 is unpersuasive.  Comment 4 explains that failure to satisfy § 42a-2-201 does not render a "contract void for all purposes, but merely prevents it from being judicially enforced in favor of a party to the contract."  U.C.C. § 2-201 cmt. 4.  UNI argues that its claim does not require judicial enforcement in its favor.  But UNI seeks damages for breach of an obligation that § 42a-2-309(3), a gap-filling provision, allegedly imposed.  Obtaining that relief necessarily requires judicial enforcement of the agreement in UNI's favor.

The examples in Comment 4 further undermine UNI's argument.  They illustrate that an agreement unenforceable under the statute of frauds may still have legal consequences in collateral contexts.  *See id.* (explaining, for example, that "a buyer who takes possession of goods as provided in an oral contract, which the seller has not meanwhile repudiated, is not a trespasser," and that the statute of frauds does not protect a third party who wrongfully induces nonperformance).  But those examples do not suggest that one contracting party may recover damages from the other by invoking § 42a-2-309(3) after the underlying agreement has been deemed unenforceable.  Accordingly, UNI's claim based on § 42a-2-309(3) fails.

**III. Whether Leprino breached the parties' express contracts by denying UNI's rollover requests.**

The district court held that UNI did not have a contractual right to a rollover absent Leprino's consent, so that Leprino did not breach the parties' express contracts by refusing to grant UNI's requests for rollovers. UNI argues that the district court misapprehended its argument. In UNI's view, the question is not whether it had a unilateral right to roll over orders into a later quarter, but whether the parties' course of dealing required Leprino to exercise good faith in considering UNI's rollover requests. Even on that framing, however, we agree with the district court.

"A course of performance or course of dealing between the parties . . . is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." Conn. Gen. Stat. § 42a-1-303(d). A "course of dealing" is "a sequence of conduct concerning previous transactions between the parties . . . that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." § 42a-1-303(b). "[T]he express terms of an agreement and any applicable . . . course of dealing . . . must be construed whenever reasonable as consistent with each other," but "[i]f such a construction is unreasonable, [the] [e]xpress terms prevail over . . . course of dealing." § 42a-1-303(e).

The district court correctly concluded that the course of dealing evidence here demonstrated only that UNI could request a rollover and that Leprino could decide, on a case-by-case basis, whether to consent. The parties' course of dealing did not establish either a unilateral option in UNI or a contractual obligation on Leprino's part to approve, or to negotiate toward approval of, every rollover request. Thus, although the listed delivery dates were better understood

6

as projected rather than rigid dates, UNI remained obligated to take delivery within the relevant quarter unless Leprino agreed to a rollover.

We agree with the district court that UNI's rollover requests are best understood as requests to modify the parties' quarterly contracts under Conn. Gen. Stat. § 42a-2-209(1). The parties were free to modify those contracts, but modification required agreement. UNI cites no authority clearly imposing a duty to agree, or to negotiate in good faith toward agreement, merely because prior modifications had sometimes been granted.

Accordingly, Leprino did not breach any contractual duty by denying UNI's rollover requests.

## IV. Whether the district court erred in granting summary judgment on UNI's remaining claims.

The district court dismissed UNI's claims for breach of the implied covenant of good faith and fair dealing and for a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). We agree with the district court that summary judgment on these claims was proper.

The "duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *M&T Bank v. Lewis*, 349 Conn. 9, 34 (2024) (citation modified). "[B]ecause the covenant of good faith and fair dealing only requires that neither party [to a contract] do anything that will injure the right of the other to receive the benefits of the agreement, it is not implicated by conduct that does not impair contractual rights." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013) (citation modified). As explained, the alleged implied-in-fact supply agreement is unenforceable, and Leprino did not violate any contractual obligation by denying UNI's requests for rollovers. Because we agree with the district court that Leprino did not impair UNI's contractual rights, UNI's implied covenant of good faith and fair dealing claim necessarily fails.

UNI's CUTPA claim fares no better.  "[A] simple contract breach is not sufficient to establish a violation of CUTPA, particularly where the count alleging CUTPA simply incorporates by reference the breach of contract claim and does not set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy.*"* *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1039 (2d Cir. 1995) (citation modified). UNI's CUTPA claim largely rests on the same allegations as its contract claims.  Because those contract theories fail, and UNI has failed to present evidence aside from the alleged contractual violations sufficient to support a CUTPA claim, summary judgment on UNI's CUTPA claim was proper.

*        *        *

We have considered UNI's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk